BELLSOUTH CAROLINAS PCS, L.P., D/B/A BELLSOUTH MOBILITY DCS, PETITIONER V. HENDERSON COUNTY ZONING BOARD OF ADJUSTMENT, RESPONDENT V. RUSSELL PHIPPS AND SHARON PHIPPS, INTERVENORS

No. COA05-31

(Filed 15 November 2005)

**Zoning— cellular telephone tower—public utility station**
    A cellular telephone company is a "public utility" and a cellular telephone tower is a "public utility station" under the Henderson County Zoning Ordinance. The Henderson County Zoning Board of Adjustment erred as a matter of law by holding otherwise, and the cellular telephone company was entitled to a zoning permit to build its tower in an R-20 zoning district.

Appeal by petitioner from judgment entered 5 October 2004 by Judge E. Penn Dameron, Jr. in Henderson County Superior Court. Heard in the Court of Appeals 10 October 2005.

*Van Winkle, Buck, Wall, Starnes, & Davis, P.A., by Craig D. Justus, for petitioner-appellant.*

*Samuel H. Fritschner for respondent-appellee.*

BELLSOUTH CAROLINAS PCS, L.P. v. HENDERSON CTY. BD. OF ADJUST.

[174 N.C. App. 574 (2005)]

STEELMAN, Judge.

On 4 June 1997, the Henderson County Zoning Administrator issued a permit to petitioner, BellSouth Carolina PCS, L.P., d/b/a BellSouth Mobility DCS (Bellsouth), to build a base transceiver station (a cellular telephone tower) in an R-20 zoning district. BellSouth provides two-way telephone communication services to the public. The cellular telephone tower is necessary for BellSouth to be able to provide cellular service to that region. In reliance on the zoning permit, BellSouth erected the tower. Several county residents appealed the zoning administrator's issuance of the permit. The Henderson County Zoning Board of Adjustment (Board) heard the appeal. The Board determined that BellSouth did not qualify as a "public utility" and its cellular telephone tower was not a "public utility station." As a result, the Board vacated the zoning permit. BellSouth filed a petition for *writ of certiorari* in the Henderson County Superior Court on 26 September 1997, appealing the Board's revocation of its permit. The trial court granted Russell and Sharon Phipps' motion to intervene. On 9 July 1998, the superior court entered judgment affirming the Board's decision, but stayed the effect of its ruling pending appeal. BellSouth appealed to this Court. In an unpublished opinion filed 20 June 2000, this Court remanded the matter to the trial court for entry of further findings of fact.

The matter came before the superior court on 23 August 2004. On 5 October 2004, the trial court entered judgment affirming the Board's decision. BellSouth appeals.

## Issue

The issue in this case is whether BellSouth, a wireless telecommunications provider, is a public utility entitled to a permit to construct a cellular telephone tower under the Henderson County Zoning Ordinance.

## Standard of Review

The Board's " 'findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority.' " *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12, 565 S.E.2d 9, 17 (2002) (citations omitted). Since the Board operates as the fact finder, the superior court sits as a court of appellate review. *Id.* As such, the trial court does not review the sufficiency of

BELLSOUTH CAROLINAS PCS, L.P. v. HENDERSON CTY. BD. OF ADJUST.

[174 N.C. App. 574 (2005)]

evidence presented to it, but rather reviews the evidence presented to the Board. *Id.*

The applicable standard of review when the trial court sits in the posture of an appellate court depends on the type of error assigned. *Id.* at 13, 565 S.E.2d at 17. If the petitioner asserts the board's decision is not supported by the evidence or is arbitrary and capricious, the trial court must apply the whole record test. *Id.* Under the whole record test, the trial court examines the entire record to determine whether it contains substantial evidence to support the agency's decision. *Id.* at 14, 565 S.E.2d at 17. In doing so, the trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency. *Id.* at 14, 565 S.E.2d at 17-18. The trial court conducts *de novo* review when considering allegations that the board's decision was affected by error of law. *Id.* at 13, 565 S.E.2d at 17. Under *de novo* review, the reviewing court considers the matter anew, and may freely substitute its own judgment for that of the agency's. *Id.* Finally, the trial court "must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Id.* at 13, 565 S.E.2d at 17.

When this Court reviews the trial court's order concerning a board's decision, we examine the order to: (1) determine whether the trial court exercised the appropriate standard of review and, if so, (2) decide whether the court did so properly. *Id.* at 14, 565 S.E.2d at 18.

In this case, the trial court carefully set forth the applicable standard of review. It applied the whole record test to the findings of fact to which plaintiff objected. It then applied *de novo* review to the Board's conclusions of law, as well as to those portions of the Board's findings of fact which were actually conclusions of law. On appeal, appellant asserts the trial court's ruling, affirming the Board's decision that it was not a public utility, was an error of law. We therefore apply *de novo* review.

## Analysis

The zoning ordinance in effect at the time BellSouth applied for the zoning permit to build its cellular telephone tower in an R-20 zoning district provided in pertinent part:

SECTION 603. R-20 Low-Density Residential District

603.01. Within the R-20 Low-Density Residential District, the following uses are permitted:

. . . .

BELLSOUTH CAROLINAS PCS, L.P. v. HENDERSON CTY. BD. OF ADJUST.

[174 N.C. App. 574 (2005)]

6. Transformer and public stations, provided that:

. . . .

b. Public utility stations

1. The structures are located on sufficient land to meet all set-back requirements of the ordinance.

2. The stations are completely enclosed, either by a building or a wire fence at least eight (8) feet high.

3. There is an evergreen planted buffer strip along the side and rear property lines of residential zoned property.[1]

Nowhere in the zoning ordinance are the terms "public utility" or "public utility station" defined. However, the ordinance states: "Except as specifically defined herein, all words used in this ordinance have their customary dictionary definitions." Henderson County Zoning Ordinance, Section 400.

The primary rule when interpreting a county ordinance is that the intent of the enacting body controls. *See Capricorn Equity Corp. v. Town of Chapel Hill*, 334 N.C. 132, 138, 431 S.E.2d 183, 187 (1993). "Intent is determined according to the same general rules governing statutory construction, that is, by examining (i) language, (ii) spirit, and (iii) goal of the ordinance." *Id.* at 138, 431 S.E.2d at 188. However, since zoning ordinances restrict common-law property rights, ambiguous zoning ordinances should be interpreted to permit the free use of land. *Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment*, 354 N.C. 298, 308, 554 S.E.2d 634, 640-41 (2001).

The trial court used the definitions of public utility contained in the *American Heritage College Dictionary*, *Webster's New World Dictionary*, and *Black's Law Dictionary*. The *American Heritage Dictionary* defines public utility as "[a] private business organization, subject to governmental regulation, that provides an essential commodity or service to the public." THE AMERICAN HERITAGE COLLEGE DICTIONARY 1106 (3rd ed. 1997). *See Herring v. Liner*, 163 N.C. App. 534, 539, 594 S.E.2d 117, 120-21 (2004) (noting this Court has "routinely referred to the *American Heritage Dictionary* in determining the ordinary and usual meaning of non-technical words"). *Black's Law Dictionary* describes a "public utility" as:

---

1. Subsequent to the Board's hearing, the Henderson County Commissioners adopted the Wireless Communication Tower Ordinance. That ordinance is not at issue in this case.

BELLSOUTH CAROLINAS PCS, L.P. v. HENDERSON CTY. BD. OF ADJUST.

[174 N.C. App. 574 (2005)]

1. A company that provides necessary services to the public, such as telephone lines and service, electricity, and water. • Most utilities operate as monopolies, but are subject to governmental regulation. 2. A person, corporation, or other association that carries on an enterprise for the accommodation of the public, the members of which are entitled as a matter of right to use its facilities.

BLACK'S LAW DICTIONARY 1582 (8th ed. 2004). Although *Black's Law Dictionary* is a legal rather than standard dictionary, we find it helpful in determining the characteristics of a public utility. *See Herring*, 163 N.C. App. at 539, 594 S.E.2d at 120. These dictionary definitions are also consistent with the discussion of this issue found in the treatise *Anderson's American Law of Zoning*. Although these sources say the same thing, we believe *Anderson's* more succinctly describes the characteristics of a public utility to include: (1) the essential nature of the services offered, (2) "operat[ion] under a franchise, subject to some measure of public regulation, and (3) logistic problems, such as the fact that "[t]he product of the utility must be piped, wired, or otherwise served to each user . . .[,] the supply must be maintained at a constant level to meet minute-by-minute need[,] and [t]he user has no alternative source [and] the supplier commonly has no alternative means of delivery." 2 Kenneth H. Young, ANDERSON'S AMERICAN LAW OF ZONING § 12.32 (4th ed. 1996).

The determination of what constitutes a public utility requires a flexible rule. *See A & B Refuse Disposers, Inc. v. Bd. of Ravenna Township Trs.*, 596 N.E.2d 423, 426 (Ohio 1992). No single factor is controlling in determining whether an entity is a public utility, although each must be weighed, including lack of competition in the local marketplace, the good or service provided, and the existence of regulation by government authority. *See Campanelli v. AT&T Wireless Serv. Inc.*, 706 N.E.2d 1267, 1269 (Ohio 1999) (noting no one factor is determinative). It is important to note that the emphasis in such a determination should be placed on the function of the service provided rather than a literal interpretation of the definition of a public utility. *Utilities Comm. v. Southern Bell*, 326 N.C. 522, 527-28, 391 S.E.2d 487, 490 (1990) (holding the function of a public utility is controlling, not how the term is defined). Nor does the number of subscribers matter in determining whether a service is essential. *See Utilities Comm. v. Simpson*, 295 N.C. 519, 246 S.E.2d 753 (1978); *Utilities Comm. v. Telegraph Co.*, 267 N.C. 257, 268, 148 S.E.2d 100, 109 (1966).

**BELLSOUTH CAROLINAS PCS, L.P. v. HENDERSON CTY. BD. OF ADJUST.**

[174 N.C. App. 574 (2005)]

BellSouth provides a telephone service, which has traditionally been recognized as a public utility. *See e.g. Utilities Comm. v. Southern Telegraph Co.*, 22 N.C. App. 714, 716, 207 S.E.2d 771, 773 (1974) (citing N.C. Gen. Stat. § 62-3(23)a.6). Wireless telecommunication providers are subject to governmental regulation. They must obtain a license from the Federal Communications Commission (FCC). *See* 47 U.S.C. § 301, *et al.* In addition, mobile telephone service is regulated as a "common carrier" by the FCC, and they must provide their service to the public in a reasonable and non-discriminatory manner, 47 U.S.C. § 332(c)(1)(A), just like land-line telephone companies. All common carriers are required to furnish service upon reasonable request. 47 U.S.C. § 201(a). In addition, their rates and charges must be just and reasonable, 47 U.S.C. § 201(b), and they may not make "any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities or services." 47 U.S.C. § 202(a). Although BellSouth is not a monopoly, we find this factor to be of less significance in light of federal deregulation and the changing nature of technology in the telecommunications industry. *Accord Campanelli*, 706 N.E.2d at 1269-70.

Although this issue is one of first impression for this State, other states have concluded that a cellular telephone company is a public utility. *See e.g. Campanelli*, 706 N.E.2d 1267; *Nynex Mobile Communications Co. v. Hazlet Tp. Zoning Bd. of Adjustment*, 648 A.2d 724 (N.J. Super. Ct. App. Div. 1994); *Nextel Partners, Inc. v. Town of Fort Ann*, 1 A.D.3d 89 (N.Y. App. Div. 2003), *appeal denied*, 808 N.E.2d 358 (N.Y. 2004); *Cellular Tel. Co. v. Rosenberg*, 624 N.E.2d 990 (N.Y. 1993); *McCaw Communications Co. v. Marion County*, 773 P.2d 779 (Or. Ct. App. 1989). Pennsylvania has taken a contrary position. *Crown Communications v. Zoning Hearing Bd. of Borough of Glenfield*, 705 A.2d 427 (Pa. 1997). We find the reasoning of this decision to be distinguishable. Pennsylvania held the service was not a public utility because the Pennsylvania Utility Code specifically excluded "mobile domestic cellular radio telecommunications service" and the providers also were not required to render service to the general public upon reasonable demand.

Accordingly, we hold that a cellular telephone company is a "public utility." In addition, a cellular telephone tower which provides cellular telephone service is a "public utility station" under Section 603.01 of the Henderson County Zoning Ordinance. The Board erred as a matter of law in holding BellSouth was not a public utility and by concluding that the cellular tower was not a "public utility station."

We reverse and remand this matter for entry of judgment consistent with this opinion.

REVERSED.

Chief Judge MARTIN and Judge HUNTER concur.