DAVIDSON COUNTY BROADCASTING, INC., AND RICHARD AND DORCAS PARKER, PETITIONERS v. ROWAN COUNTY BOARD OF COMMISSIONERS, RESPONDENT, MT. ULLA HISTORICAL PRESERVATION SOCIETY, AND INTERESTED CITIZENS, PROSPECTIVE-ALTERNATIVE CROSS PETITIONER

No. COA06-1444

(Filed 18 September 2007)

**1. Zoning— radio tower—local ordinances—not preempted by federal aviation law**

The trial court properly concluded that Rowan County's zoning ordinances are not preempted by federal aviation law in an action involving a conditional use permit for a radio broadcast tower. The Rowan County Board of Adjustment's decision was an exercise of precisely the type of local control over private use airports that the FAA specifically endorsed and encouraged.

## 2. Zoning— radio tower—safety hazard—whole record test— evidence sufficient

There was substantial evidence to support the Rowan County Board of Adjustment's decision that a radio broadcast tower would be a safety hazard to a private use airport, although petitioners presented evidence from which the opposite could be found, and the superior court correctly upheld the Board.

Appeal from Petitioners Davidson County Broadcasting, Inc., and Richard and Dorcas Parker from Order entered 7 June 2006 by Judge W. David Lee in Superior Court, Rowan County. Heard in the Court of Appeals 10 May 2007.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P. by Derek J. Allen for Petitioner-Appellants.*

*Kluttz, Reamer, Hayes, Randolph, Adkins & Carter, LLP by Richard R. Reamer for Cross-Petitioner Appellee.*

*Parker, Poe, Adams & Bernstein, LLP by Anthony Fox for Respondent-Appellee.*

STROUD, Judge.

Petitioners Davidson County Broadcasting, Inc., and Richard and Dorcas Parker instituted this action against respondent Rowan County Board of Commissioners to review respondent's denial of petitioners' application for a conditional use permit to construct a 1,350 foot radio broadcast tower on Richard and Dorcas Parkers' property in Rowan County, North Carolina. In this appeal, we must consider both whether Rowan County is precluded from regulating air safety under the doctrine of federal preemption and whether the superior court correctly concluded that there was competent, material, and substantial evidence to support respondent's decision to deny petitioners' conditional use permit. For the following reasons, we hold that federal law does not preempt Rowan County's regulations in this situation and we affirm the superior court's order upholding the decision of the Rowan County Board of Commissioners.

### I. Background

On 18 January 2005, petitioner Davidson County Broadcasting, Inc. ("DCBI") applied for a conditional use permit ("CUP") to construct a 1,350 foot radio tower ("tower") on property owned by petitioners Richard and Dorcas Parker ("Parkers"). Respondent Rowan

County Board of Commissioners ("Board") conducted a public hearing to consider the application on 13 October, 24 October, and 7 November 2005. The Board voted to deny the CUP on 7 November 2005 and adopted a written decision denying the CUP on 21 November 2005.

DCBI and the Parkers filed a petition for writ of certiorari with the Superior Court, Rowan County on 9 December 2005, seeking review under N.C. Gen. Stat. § 153A-340(c) (2005) of the Board's denial of the CUP. The petition was allowed on the same date. On 21 December 2005, Mt. Ulla Historical Preservation Society and Interested Citizens ("Mt. Ulla") filed a cross alternative petition for certiorari and motion to intervene before the superior court. The court allowed the petition on the same date.[1] The petition for certiorari was heard in Superior Court, Rowan County, before the Honorable Judge W. David Lee, on 13 March 2006. The superior court entered its order on 7 June 2006, *nunc pro tunc* to 13 March 2006, affirming the Board's decision to deny the CUP. Petitioners appeal from this order.

The Rowan County zoning ordinance requires that an applicant for a CUP demonstrate that

(1) Adequate transportation access to the site exists;

(2) The use will not significantly detract from the character of the surrounding area;

(3) Hazardous safety conditions will not result;

(4) The use will not generate significant noise, odor, glare, or dust;

(5) Excessive traffic or parking problems will not result; and

(6) The use will not create significant visual impacts for adjoining properties or passersby. (Ord. of 1-19-98, § IV)

Rowan County, N.C., Code § 21-59 (1991). Rowan County Code § 21-60 (3) contains additional specific requirements for communi--

---

1. On 1 March 2006 Petitioners filed a motion to dismiss Mt. Ulla's cross petition and motion to intervene, but the superior court never ruled on this motion. Pursuant to N.C.R. App. P. 10(b)(1), this issue was not preserved for appellate review as petitioners did not obtain a ruling upon the motion to dismiss. N.C.R. App. P. 10(b)(1). Also, no error has been assigned or argued as to Mt. Ulla's status as a party to this appeal.

We also note that the order failed to list Mt. Ulla in the caption. We have therefore added Mt. Ulla to the caption of this case.

cations and telecommunications towers. Rowan County, N.C., Code § 21-60 (1991). The Board's denial of the CUP was based upon Rowan County Code § 21-59(3), as the decision found that "hazardous safety conditions **will** result from the approval of the use." (emphasis in original).

The Board further found as follows

(19) Marshall Sanderson with the Division of Aviation of the North Carolina Department of Transportation testified on behalf of the NCDOT Aviation Division and asked that the construction of the tower at the proposed location not be allowed.

(20) Mr. Sanderson further testified that the proposed tower location will be a hazard to aircraft using Miller Air Park and would penetrate air traffic patterns.

(21) Mr. Phil Loftin, a commercially-rated pilot in single and multi-engine aircraft with over 5000 hours, also testified that the location of the tower would be a hazard to the flying public.

(22) Captain John Cox, a master pilot with more than 35 years experience and 14,000 hours, testified that the construction of a 1350' broadcast tower on the property will be on the extended center line of Miller Air Park runway and within five statute miles of the air park. He further testified that the tower will not meet adequate safety criteria and will pose significant risks to air traffic during take offs and landings.

(23) Mr. Cox discussed the normal flight operations at and around Miller Airpark and pointed out that pilots will not be able to see the tower on hazy days. He also presented documentation detailing past airplane crashes into comparable towers.

(24) Staff and the Applicant provided a letter, "Determination of No Hazard", from the FAA indicating that the proposed tower would offer no threat to aircraft operation. However, it was pointed out that the FAA's review included only flight operations to and from public airports. Miller Airpark is a private airport to which the FAA regulations do not apply.

(25) Further, the study done by the FAA prior to issuing its letter of no impact did not consider the private Miller Airpark.

(26) Sonny Schumacher, an expert witness, testified about the normal operation of aircraft at Miller Airpark and indicated that

most departures were to the south and that landings were to the north, which would make the tower less of a problem. But, he admitted that this could be reversed based on wind direction. His report explained the FAA standards that apply to obstructions like towers.

(27) Mr. Loftin, a long time pilot, presented a videotape showing the conditions an operator of a small plane flying out of Miller Airpark would experience. The video demonstrated that towers are difficult to see, pose dangers to the flying public and that upon departing the airport to the north, due to the nose attitude [sic] of the plane during a normal climb, a pilot will not see the tower when the tower is positioned directly ahead of the plane, which occurs during normal departures or missed approaches.

(28) Several experienced pilots (Wayne McConnell, Michael Henry, Louis Dunn and Jack Edwards) testified about the impact the tower would have on air traffic safety, especially into and out of Miller Airpark.

(29) Chris Hudson, the regional representative of the Aircraft Owners and Pilots Association also testified about the negative impacts of the tower and its proposed location on safety.

(30) Overwhelming evidence was presented concerning the impact of the proposed tower on air safety.

(31) This tower unnecessarily will reduce the safety of flight operations in the area and result in hazardous safety conditions if approved.

The superior court, based upon review of the whole record, determined that the above findings of fact were based upon "competent and substantial evidence in the record, including the testimony of numerous pilots, an aviation expert, and a NCDOT representative." The superior court also considered the question of federal preemption *de novo* and determined that

federal regulation of airspace management is not so broad as to preclude Respondent from exercising its traditional role of regulating the use of structures in Rowan County . . . . Respondent's role as land use determiner under its sovereign power to impose reasonable land use restrictions does not impede or interfere with the federal authority to regulate flights in navigable air-

space, to insure the efficient use of airspace, and to insure the safety of aircraft in the air or on the ground consistent with its obligations to regulate the frequency, routes, price, or service of air carriers.

## II. Standards of Review

A particular standard of review applies at each of the three levels of this proceeding—the Board, the superior court, and this Court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12-14, 565 S.E.2d 9, 16-18 (2002). First, the Board is the finder of fact in its consideration of the application for a special use permit. *Id.*, 356 N.C. at 12, 565 S.E.2d at 17. The Board is required, as the finder of fact, to

> follow a two-step decision-making process in granting or denying an application for a special use permit. If an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. If a *prima facie* case is established, a denial of the permit then should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.
>
> . . . .
>
> Any decision of the town board has to be based on competent, material, and substantial evidence that is introduced at a public hearing.

*Id.*, 356 N.C. at 12, 565 S.E.2d at 16-17. A Board's "findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority." *Id.*, 356 N.C. at 12, 565 S.E.2d at 17 (citation and quotations omitted).

Upon appeal from the Board to the superior court, the superior court acts as a court of appellate review. *Id.* The superior court's task is:

(1) Reviewing the record for errors in law,

(2) Insuring that procedures specified by law in both statute and ordinance are followed,

(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,

(4) Insuring that decisions of . . . boards are supported by competent, material and substantial evidence in the whole record, and

(5) Insuring that decisions are not arbitrary and capricious.

*Id.*, 356 N.C. at 13, 565 S.E.2d at 17 (citation omitted).

The standard of review to be applied by the superior court depends upon the type of error assigned. *Id.* "If the error assigned is that a board's decision is not supported by the evidence or is arbitrary or capricious, the superior court must apply the whole record test. *Id.* *De novo* review is appropriate "if a petitioner contends the board's decision was based on an error of law," *Id.* (citations and quotations omitted). Whether federal law preempts state law is a question of a law which is reviewed *de novo. Cox v. Shalala*, 112 F.3d 151, 153 (4th Cir. 1997).

When using *de novo* review,

the superior court considers the matter anew and freely substitutes its own judgment for the [board's] judgment. When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in order to determine whether the [board's] decision is supported by "substantial evidence." The "whole record" test does not allow the reviewing court to replace the board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*

*Mann Media, Inc.*, 356 N.C. at 13-14, 565 S.E.2d at 17-18 (internal citations and quotations omitted). Also, the superior court "must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Id.*, 356 N.C. at 13, 565 S.E.2d at 17 (citations and quotations omitted).

When this Court reviews a superior court's order regarding a zoning decision by a Board of Commissioners, we examine the order to: "(1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2) decid[e] whether the court did so properly." *Id.*, 356 N.C. at 14, 565 S.E.2d at 18 (citations and quotations omitted).

### III. Preemption by Federal Law

**[1]** Petitioners first argue that the federal regulations of navigable airspace administered by the Federal Aviation Administration ("FAA") preempt Rowan County's authority under its zoning ordinances to regulate the location of the proposed tower. Petitioners contend that the FAA has the duty and authority to regulate air safety for the entire nation and that the federal government made the determination that the proposed tower would not pose a hazard to air safety, as stated in the FAA's "Determination of No Hazard to Air Navigation"[2] issued regarding the proposed tower. Respondent contends that there is no conflict between the FAA's regulations and Rowan County's ordinances and that local governments are permitted to make aviation-related land use decisions.

Federal preemption of state or local land-use regulation involving tall structures such as radio towers by the FAA is an issue of first impression before this Court. Federal preemption is constitutionally based upon the Supremacy Clause, U.S. Constitution, art. VI, which "may entail pre-emption of state law . . . by express provision . . . ." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 131 L. Ed. 2d 695, 704 (1995). "The constitutional principle underlying the doctrine of preemption is the avoidance of conflicting regulation of conduct by various official bodies . . ., each of which has a degree of authority over the subject matter at issue." *State ex rel. Utilities Comm'n v. Carolina Power & Light Co.*, 359 N.C. 516, 524, 614 S.E.2d 281, 287 (2005). In this case, the question is not the scope of the FAA's authority, but it is "the other legal question that can arise in the context of preemption, that is, 'whether a given state authority conflicts with, and thus has been dis-

---

2. The FAA issued a document entitled "Determination of No Hazard to Air Navigation" regarding the proposed tower on 5 September 2002, which provided in pertinent part that

> [t]his aeronautical study revealed that the structure would have no substantial adverse effect on the safe and efficient utilization of the navigable airspace by aircraft or on the operation of air navigation facilities . . . . This determination concerns the effect of this structure on the safe and efficient use of navigable airspace by aircraft and does not relieve the sponsor of compliance responsibilities relating to any law, ordinance, or regulation of any Federal, State, or local government body.

The aeronautical study which was attached to the letter noted that "Miller Air Park was considered to be a private use airport and the traffic pattern was not considered" by the aeronautical study, under 14 C.F.R. § 77, the applicable federal aviation regulations.

placed by, the existence of Federal Government authority.' " *Id.*, 359 N.C. at 525, 614 S.E.2d at 287 (citation omitted).

We must begin our analysis with "a presumption against federal preemption." *Id.* " 'Where . . . the field that Congress is said to have pre-empted has been traditionally occupied by the States 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.' " *Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715, 85 L. Ed. 2d 714, 722-23 (1985) (citations omitted).

Federal aviation law contains an express preemption provision which does permit some types of state and local regulation. 49 U.S.C. § 41713(b)(1) (2004). Specifically, 49 U.S.C. § 41713(b)(1) provides that

> [e]xcept as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

*Id.* Some courts have held that the state or local zoning regulation of radio towers is preempted by the federal aviation regulations.[3] However, a majority of courts in the United States which have considered the issue have held that federal aviation law does not preempt all local or state land use regulation which may affect aviation.[4]

---

3. *See e.g., Big Stone Broad., Inc. v. Lindbloom*, 161 F.Supp.2d 1009, 1016 (N.D.S.D. 2001) (holding that "the field of air space management, at least as to radio broadcast towers" is federally preempted by the regulations of the FAA and Federal Communications Commission "from state regulatory authority.").

4. *See e.g., Faux-Burhans v. Cty. Comm'rs of Frederick County*, 674 F.Supp. 1172, 1174 (1987), *aff'd*, 859 F.2d 149 (4th Cir. 1988), *cert. denied*, 488 U.S. 1042, 102 L. Ed. 2d 992 (1989) (noting no federal preemption of local ordinances regulating the "size, scope, and manner of operations at a private airport" which are "all areas of valid local regulatory concern" and which do not inhibit "in a proscribed fashion the free transit of navigable airspace."); *see also Aeronautics Comm'n v. State ex rel. Emmis Broad. Corp.*, 440 N.E.2d 700, 704 (Ind. App. 1982) (holding that the Indiana High Structures Safety Act, I.C. 8-21-7-1 to 15, regulating the height of structures near airports is not preempted by federal law, because "Congress has evidenced a purpose to leave legal enforcement of regulations pertaining to high structures and air safety to state and local governments."); *Hoagland v. Town of Clear Lake*, 344 F.Supp.2d 1150 (N.D. Ind. 2004), *aff'd*, 415 F.3d 693 (7th Cir. 2005), *cert. denied*, 547 U.S. 1004, 164 L. Ed 2d 249 (2006) (holding that local land use regulations regarding use of a heliport are not preempted, and containing an excellent survey of many state and federal cases dealing with the issue of federal preemption and local land use regulations which may affect aviation).

Therefore, we must consider whether there is an actual conflict between the Rowan County zoning ordinance and federal law. "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *State ex rel. Utilities Comm'n*, 359 N.C. 516, 525, 614 S.E.2d 281, 287 (quoting *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204, 75 L. Ed. 2d 752, 765 (1983) (citations and internal quotations omitted).

In this case, there is no conflict between the federal aviation law and Rowan County's zoning law. Petitioners argue that the FAA's "no hazard" determination conflicts with and overrules the zoning ordinance, since the FAA found that the tower would not be a hazard to air navigation. However, the "no hazard" letter itself states that it "does not relieve the sponsor of compliance responsibilities relating to any law, ordinance, or regulation of any Federal, State, or local government body." In addition, the aeronautical study upon which the "no hazard" letter was based specifically did not consider Miller Air Park, because it was a "private use airport." The Board's findings of fact relate to safety considerations for air traffic to or from Miller Air Park, which was specifically not addressed by the FAA's study.

The FAA's position regarding preemption is that federal regulations not only permit, but encourage, this type of local regulation to maintain the safety of private use airports. The record contains a letter from the FAA's Airports District Office manager, Scott Seritt, to the Board's Chairman, Gus Andrews, dated 10 March 2004. The letter regarding Rowan County's development of "land use regulations that would protect the airspace of the Rowan County Airport and approximately 17 private-use airports from tall structures" stated:

> As you know, Rowan County is obligated, through your federal grant agreements, to protect the terminal airspace of the Rowan County Airport. **This is control that must be exercised at the local and/or state level as the federal government does not have the power to protect that airspace for you.**
>
> While there are no requirements that you protect the airspace of private-use airports, it is certainly a wise decision. Small airports are the backbone of aviation in the United States . . . . Their airspace is a precious commodity and, once it is lost, it is seldom regained. Tall structures can have significant effects on

the approaches into airports and in extreme cases can cause airports to close.

The protection of our nations [sic] airports is vital. **It is important that local communities recognize these assets and provide the necessary protection both in terms of land usages and height restrictions.** With appropriate regulations in place, local officials can make informed decisions as to the need to protect their aviation assets in balance with needs for economic development and private enterprise.

Thus, the Board's decision regarding the CUP was an exercise of precisely the type of local control over private use airports that the FAA specifically endorsed and encouraged, because the FAA did **not** have the authority to provide this protection. The superior court therefore properly conducted *de novo* review of this issue and correctly concluded that Rowan County's zoning ordinances are not preempted by federal law in this instance.

### IV.  Decision Supported by Substantial Evidence

**[2]** Petitioners next contend that the Board's decision was not supported by substantial, competent, and material evidence in the whole record and that the decision was arbitrary and capricious. On this issue, the superior court was required to use the "whole record" test, and the order specifically states that the court used this test. *Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17. Thus our role is to determine if the superior court properly applied the "whole record" test. *See id.*, 356 N.C. at 14, 565 S.E.2d at 18.

Petitioners correctly note that the Board's findings were all in favor of the petitioners, except on the issue of air safety. As we have determined that the Board is not preempted from making its determination based upon air safety, we are also aware that "[z]oning ordinances derogate common law property rights and must be strictly construed in favor of the free use of property." *Lambeth v. Town of Kure Beach,* 157 N.C. App. 349, 354, 578 S.E.2d 688, 691. "Every person owning property has the right to make any lawful use of it he sees fit, and restrictions sought to be imposed on that right must be carefully examined to prevent arbitrary, capricious or oppressive action under the guise of law." *Vance S. Harrington & Co. v. Renner*, 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952).

If an applicant produces competent, material, and substantial evidence which establishes the facts and conditions required by the

ordinance for the issuance of a conditional use permit, the applicant is *prima facie* entitled to issuance of the permit. *Humble Oil & Refining Co. v. Bd. of Alderman*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974). "Denial of a conditional use permit must be based upon findings which are supported by competent, material, and substantial evidence appearing in the record." *Howard v. City of Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002). In the case *sub judice*, we have therefore carefully examined the evidence regarding the air safety issues relevant to Miller Air Park to determine if the Board's findings on this issue were supported by "substantial evidence" and were not arbitrary or capricious.

As correctly noted by the superior court, the evidence included the "testimony of numerous pilots, an aviation expert, and a NCDOT representative" as well as extensive documentary evidence, all of which supported the Board's findings regarding the safety hazards posed by the tower to air traffic of Miller Air Park. Petitioners argue that the testimony of the pilots and other witnesses presented by appellees was erroneous, anecdotal, or inadequate in various respects. However, in applying the whole record test, "the trial court may not weigh the evidence presented to the agency or substitute its own judgment for that of the agency." *Bellsouth Carolinas PCS, L.P. v. Henderson Cty. Zoning Bd. of Adjustment*, 174 N.C. App. 574, 576, 621 S.E.2d 270, 272 (2005).

Although the petitioners did present evidence from which the Board could have found that the tower would not pose an unreasonable or unjustifiable safety hazard, there was also substantial evidence to support the Board's findings that the tower would be a safety hazard. We therefore affirm the order of the superior court.

AFFIRMED.

Judges McCULLOUGH and BRYANT concur.