TEMPLETON PROPERTIES, L.P., Petitioner v. TOWN OF BOONE, Respondent

No. COA11-1025

(Filed 6 March 2012)

### 1. Appeal and Error—law of the case—dicta

An appeal was not barred by the law of the case where respondent argued that a prior appeal had decided as a matter of law that the record contained substantial evidence to support a board of adjustment zoning decision. The statement in the prior decision was, in context, merely *dicta*.

### 2. Zoning—remand for reviewable findings—new hearing

The trial court failed in its *de novo* review of the record in a zoning case where there had been a remand for reviewable findings of fact and the trial court conducted a new hearing and gathered more evidence. Moreover, the Board did not conduct a full hearing as only opponents of the special use application were allowed to be heard.

Appeal by petitioner from order entered 25 February 2011 by Judge Marvin P. Pope, Jr. in Superior Court, Watauga County. Heard in the Court of Appeals 12 January 2012.

*Brough Law Firm, by Michael B. Brough, and Di Santi Watson Capua & Wilson, by Anthony S. di Santi, for petitioner-appellant.*

*Parker, Poe, Adams & Bernstein L.L.P., by Benjamin Sullivan, for respondent-appellee.*

STROUD, Judge.

Templeton Properties, L.P. ("petitioner") appeals from a trial court's order affirming a decision of the Town of Boone Board of Adjustment (referred herein as "respondent" or "the Board") denying petitioner's application for a special-use permit. For the following reasons, we remand for reviewable findings of fact.

### I. Background

Petitioner is the owner of a 2.9 acre parcel of land at 315 State Farm Road in the Town of Boone, North Carolina located in a "R-1 Single Family Residential" zoning district. On 2 March 2007, petitioner submitted an application to the Town for a special-use permit

to develop on this property a medical clinic in excess of 10,000 square feet,[1] which was listed as a permissible use in zone "R-1" if a special-use permit was obtained, according to the Town's Unified Development Ordinance ("UDO").[2] The Board conducted public hearings on petitioner's application on 5 April and 1 May 2007 and the Board heard evidence from the petitioner regarding the proposed medical clinic, and from nearby residents, who spoke in opposition to granting petitioner's permit. At the conclusion of the public hearing on 1 May 2007, the Board voted unanimously that petitioner's application was complete and that the application complied with all applicable requirements of the UDO. A motion was made and seconded to grant petitioner's special-use permit with restrictions including reduced parking, restriction of hours of operation, and restrictions as to what types of medical facilities could be operated at that location. However, the motion failed by a vote of 3 to 5. One of the opposing board members stated that the proposed development was not in harmony with the neighborhood and was incompatible with the Town's Comprehensive Plan; a second opposing board member stated that "the congestion would be a serious safety concern as well at certain times of the day[;]" and a third opposing board member agreed that after listening to the concerns of the residents, he felt there was an issue regarding safety due to traffic congestion and also felt that the project would compromise the quality of the residential neighborhood. On 4 May 2007, respondent sent petitioner a letter informing him that his application for the special-use permit had been denied and "Members of the Board stated that the project [(1)] will not be in harmony with the area, [(2)] will not be in general conformity with the comprehensive plan, and [(3)] will materially endanger the public health or safety. The last concern was specifically related to traffic issues." On 8 May 2007, petitioner, through counsel, sent a letter to respondent contending that the result of the Board's 1 May 2007 vote was not to deny his special-use permit, and because they never adopted or voted on a motion to deny the permit pursuant to UDO §§ 74 and 69, their actions only amounted to a denial of "the conditions that the applicant proposed were not imposed by the Board of Adjustment." On 14 May 2007, respondent sent a letter to petitioner that the Board had scheduled a "Continuation Meeting" on 21 May 2007 to address petitioner's contention. However, on 18 May

---

1. The application listed "James West" as "the applicant/contact[.]"

2. Subsequent to petitioner's application, the town amended the UDO to remove medical clinics in excess of 10,000 square feet from the list of permissible uses in an R-1 zoning district.

2007, petitioner filed a petition for writ of certiorari with the Superior Court, Watauga County, which was granted on 19 May 2007.[3] On 21 May 2007, the Board conducted its "Continuation Meeting" and voted to deny petitioner's application for a special-use permit. In subsequent discussion, two Board members stated that the motion should be denied because the proposed development would not (1) be in harmony with the area in which it is to be located, and (2) would not be in general conformity with the Comprehensive Plan. On 7 July 2008, the superior court entered an order, with supporting findings of fact and conclusions of law, reversing the Board's denial of petitioner's application for a special-use permit and remanded the case to the Board for issuance of petitioner's special-use permit.

Respondent appealed to this Court from the superior court's order. This Court in *Templeton Props. LP v. Town of Boone*, ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2009 N.C. App. LEXIS 1240 (N.C. Ct. App. July 21, 2009) (unpublished), held that the superior court erred by reviewing factual issues *de novo* as

> [t]here was substantial evidence before the Board of Adjustment supporting and opposing the special use permit to build the proposed medical clinic. However, neither the transcripts of proceedings before the Board of Adjustment nor any of its letters to Petitioner indicate the facts the Board of Adjustment ultimately found. Indeed, transcripts from the 1 May 2007 hearing and the 21 May 2007 Continuation Meeting show that a majority of the Board of Adjustment Members intended to deny the special use permit, but the facts underlying those Board members' decisions are nowhere evident.

> The Superior Court was not free to find facts in place of the Board of Adjustment; its function was to determine whether the Board of Adjustment's findings were supported by competent evidence in the record before it. Since there were no factual findings in the record for the Superior Court to review, that court should have remanded to the Board of Adjustment for reviewable findings of fact.

*Id.* at *12-13 (citation omitted). This Court remanded "to the Superior Court with instructions to remand to the Board of Adjustment for reviewable findings of fact." *Id.* at *14. This Court further noted that it was not addressing the parties' remaining arguments on appeal and

---

3. Petitioner's petition for writ of certiorari and the superior court's order granting that petition are not in the record.

"[i]f there are further proceedings after remand to the Board of Adjustment, the Superior Court should review the entire record of proceedings before the Board of Adjustment, including its actions in the Continuation Meeting." *Id.*

On remand, the Board met on 2 September 2010 to make findings of fact, as directed by this Court. The Board agreed to permit petitioner's counsel to present arguments and to permit residents to voice their opinions regarding petitioner's application for a special-use permit. Following testimony from residents, the Board made findings of fact, then voted (6-2) to adopt those findings of fact in support of the denial of the petitioner's application for a special-use permit. On 29 September 2010, the Board issued a written decision including findings of fact and conclusions of law. On 27 October 2010, petitioner appealed to the superior court by petition for writ of certiorari, which was granted on the same day. A hearing was conducted on 21 February 2011[4] and by written order, the trial court affirmed the Board's decision. Petitioner filed notice of appeal to this Court on 25 March 2011.

## II. Standard of Review

We have stated that

> [a] particular standard of review applies at each of the three levels of this proceeding—the Board, the superior court, and this Court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 12-14, 565 S.E.2d 9, 16-18 (2002). First, the Board is the finder of fact in its consideration of the application for a special use permit. *Id.*, 356 N.C. at 12, 565 S.E.2d at 17. The Board is required, as the finder of fact, to
>
> > follow a two-step decision-making process in granting or denying an application for a special use permit. If an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. If a *prima facie* case is established, a denial of the permit then should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.

---

4. A transcript of this hearing is not in the record on appeal.

. . . .

> Any decision of the town board has to be based on competent, material, and substantial evidence that is introduced at a public hearing.

*Id.*, 356 N.C. at 12, 565 S.E.2d at 16-17. A Board's "findings of fact and decisions based thereon are final, subject to the right of the courts to review the record for errors in law and to give relief against its orders which are arbitrary, oppressive or attended with manifest abuse of authority." *Id.*, 356 N.C. at 12, 565 S.E.2d at 17 (citation and quotations omitted).

*Davidson County Broad., Inc. v. Rowan County Bd. of Comm'rs*, 186 N.C. App. 81, 86, 649 S.E.2d 904, 909 (2007), *disc. review denied*, 362 N.C. 470, 666 S.E.2d 119 (2008). A superior court's review of a decision by the board of adjustment is limited to:

> (1) review the record for errors of law; (2) ensure that procedures specified by law in both statute and ordinance are followed; (3) ensure that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents; (4) ensure that the decision is supported by competent, material, and substantial evidence in the whole record; and (5) ensure that the decision is not arbitrary and capricious.

*Wright v. Town of Matthews*, 177 N.C. App. 1, 8, 627 S.E.2d 650, 656 (2006) (citation and quotation marks omitted). Additionally,

> [t]he standard of review to be applied by the superior court depends upon the type of error assigned. [*Mann Media, Inc.*, 356 N.C. at 13, 565 S.E.2d at 17]. "If the error assigned is that a board's decision is not supported by the evidence or is arbitrary or capricious, the superior court must apply the whole record test." *Id. De novo* review is appropriate "if a petitioner contends the board's decision was based on an error of law," *Id.* (citations and quotations omitted). . . .

When using *de novo* review,

> the superior court considers the matter anew and freely substitutes its own judgment for the [board's] judgment. When utilizing the whole record test, however, the reviewing court must examine all competent evidence (the "whole record") in

order to determine whether the [board's] decision is supported by "substantial evidence." The "whole record" test does not allow the reviewing court to replace the board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo.*

*Mann Media, Inc.,* 356 N.C. at 13-14, 565 S.E.2d at 17-18 (internal citations and quotations omitted). Also, the superior court "must set forth sufficient information in its order to reveal the scope of review utilized and the application of that review." *Id.,* 356 N.C. at 13, 565 S.E.2d at 17 (citations and quotations omitted).

*Davidson County Broad., Inc.,* 186 N.C. App. at 87, 649 S.E.2d at 909-10. "When this Court reviews a superior court's order which reviewed a zoning board's decision, we examine the order to: (1) determine whether the superior court exercised the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly." *Cook v. Union County Zoning Bd. of Adjustment,* 185 N.C. App. 582, 587, 649 S.E.2d 458, 464 (2007) (citation, brackets, and quotation marks omitted). On appeal petitioner argues that the superior court erred in affirming the Board's decision because (1) the denial of the application cannot be supported as a matter of law "on the basis that the proposed medical clinic would not be in harmony with the area in which it is proposed to be located[;]" (2) the denial of the application cannot be supported as a matter of law "on the basis that the proposed medical clinic would not be in general conformity with the town's comprehensive plan[;]" and (3) the "conclusion that the clinic would materially endanger public safety is not supported by substantial competent evidence." Respondent raises two arguments pursuant to N.C.R. App. P. 28(c)[5] arguing that (1) petitioner's appeal is barred by the law of the case and (2) petitioner's argument regarding whether his proposed development would have been in conformity with the Town's Comprehensive Plan has been waived or abandoned.[6] As the issue regarding the law of the case is dispositive, we address it first.

---

5. Even though respondent did not appeal this issue, N.C.R. App. P. 28(c) permits an appellee "[w]ithout taking an appeal" to "present issues on appeal based on any action or omission of the trial court that deprived the appellee of an alternative basis in law for supporting the judgment, order, or other determination from which appeal has been taken." *See also* N.C.R. App. P. 10(c).

6. In this argument, respondent contends that petitioner's appeal is "moot" because he failed to preserve any argument regarding the proposed medical clinic's

### III. Law of the case

**[1]** Respondent raises one concern, as noted above, regarding the law of the case and the record before us presents a second question regarding this same issue.

### A. Substantial evidence

First respondent argues that petitioner's appeal is barred by the "law of the case" because this Court decided as a matter of law that the record contained "substantial evidence" to support the Board's decision to deny petitioner's application. Respondent argues that on the previous appeal this Court made the following ruling:

> There was substantial evidence before the Board of Adjustment supporting and opposing the special use permit to build the proposed medical clinic.

*Templeton Props. LP v. Town of Boone,* ___ N.C. App. ___, ___, ___ S.E.2d ___, ___, 2009 N.C. App. LEXIS 1240, at *12-13. Respondent argues that since this was the law of the case and petitioner "did not seek discretionary review" at the Supreme Court, it is established as a matter of law that there was "substantial evidence" to support the Board's decision. Petitioner responds that this is not the holding of the case and the Court was merely making an observation. We agree.

Our Supreme Court has stated that "[a] decision of this Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal." *Lea Co. v. North Carolina Bd. of Transp.*, 323 N.C. 697, 699, 374 S.E.2d 866, 868 (1989) (quoting *Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 239, 210 S.E.2d 181, 183 (1974)); *see Collins v. Simms*, 257 N.C. 1, 3, 125 S.E.2d 298, 300 (1962). As noted above, the board of adjustment is the sole finder of fact in a proceeding concerning an application for a special use permit. *See Davidson County Broad., Inc.*, 186 N.C. App. at 86, 649 S.E.2d at 909. Contrary to respondent's argument, this portion of the opinion was not "the law of the case[.]" *See Lea Co.*, 323 N.C. at 699, 374 S.E.2d at 868. In context, it is merely *obiter dicta* explaining the facts surrounding the superior court's error as it

---

conformity with the Comprehensive Plan. "[A] case should be considered moot when 'a determination is sought on a matter which, when rendered, cannot have any practical effect on the existing controversy.' " *Hospice & Palliative Care Charlotte Region v. N.C. HHS*, 185 N.C. App. 109, 111-12, 648 S.E.2d 284, 286 (2007) (citation and quotation marks omitted). However, as a determination as to whether this issue was abandoned or waived would have an effect on the case before us, respondent's argument is not about "mootness" but rather an issue of abandonment or waiver.

notes that there was evidence in the record for and against granting the permit but the board of adjustment failed to make findings of fact either way. *See Templeton Props. LP*, 2009 N.C. App. LEXIS 1240, at *12-13; *Romulus v. Romulus*, ___ N.C. App. ___, ___, 715 S.E.2d 308, 321 (2011) (explaining that "[i]n every case what is actually decided is the law applicable to the particular facts; all other legal conclusions therein are but *obiter dicta*." (citation omitted)). In fact, this Court's holding was that "[t]he Superior Court was not free to find facts in place of the Board of Adjustment; its function was to determine whether the Board of Adjustment's findings were supported by competent evidence in the record before it[,]" and the matter was remanded back to the superior court with instructions to remand back to the Board of Adjustment to make "reviewable findings of fact." *Templeton Props. LP*, 2009 N.C. App. LEXIS 1240, at *13-14. This Court noted that there was substantial evidence both *supporting* and opposing issuance of the special use permit; the role of the Board as trier of fact is to find the facts from that evidence, based upon "competent, material, and substantial evidence that is introduced at a public hearing." *See Davidson County Broad., Inc.*, 186 N.C. App. at 86, 649 S.E.2d at 909. The prior opinion simply notes that there was sufficient evidence in the record to support a decision either to deny or allow the petition, but did not dictate any particular findings, as it is the role of the Board to make findings of fact. Therefore, respondent's argument is overruled.

We further note that the superior court concluded in its 25 February 2011 order that

> 5. The Court of Appeals has already held that there was substantial evidence in the Record to support the Board's decision. That holding is the law of the case and cannot be challenged by [petitioner].

This conclusion amounted to an error of law, as it is based on *dicta* from this Court's previous opinion. *See Wright*, 177 N.C. App. at 8, 627 S.E.2d at 656. Accordingly, this conclusion of law in the superior court's order is reversed.

B.  Reviewable findings of fact

[2]  The record before us raises another issue regarding "the law of the case." It appears that the superior court failed in its *de novo* review, as it did not address an "error of law[,]" "ensure that procedures specified by law in both statute and ordinance [were] followed[,]" or "ensure that appropriate due process rights of the petitioner [were] protected,

including the right to offer evidence, cross-examine witnesses, and inspect documents[,]" *see id.,* as the record shows that the Board conducted a new hearing and gathered additional evidence on 2 September 2010, contrary to "the law of the case" from our prior opinion.

Our Supreme Court has stated that

[a] county may create a planning agency to perform the zoning duties of a board of adjustment, N.C.G.S. § 153A-344(a) (2001); N.C.G.S. § 153A-345(a) (2001), including issuing special use permits to "permit special exceptions to the zoning regulations in classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified in the ordinance," N.C.G.S. § 153A-345(c).

A special use permit is "one which is expressly permitted in a given zone upon proof that certain facts and conditions detailed in the ordinance exist." *Application of Ellis,* 277 N.C. 419, 425, 178 S.E.2d 77, 80 (1970). " 'It does not entail making an exception to the ordinance but rather permitting certain uses which the ordinance authorizes under stated conditions.' " *Woodhouse v. Board of Comm'rs of Nags Head,* 299 N.C. 211, 218, 261 S.E.2d 882, 887 (1980) (quoting with approval *Syosset Holding Corp. v. Schlimm,* 15 Misc. 2d 10, 11, 159 N.Y.S.2d 88, 89 (N.Y. Sup. Ct. 1956), *modified on other grounds,* 4 A.D.2d 766, 164 N.Y.S.2d 890 (1957)). "It is granted or denied after compliance with the procedures prescribed in the ordinance." *Humble Oil & Ref. Co. v. Board of Aldermen of Chapel Hill,* 284 N.C. 458, 467, 202 S.E.2d 129, 135 (1974).

*Mann Media, Inc.,* 356 N.C. at 10, 565 S.E.2d at 15-16. Several sections of the Town of Boone's UDO were relevant to the Board in making its decision regarding petitioner's application for a special-use permit. Section 69 of the UDO governs decisions regarding "Special Use Permits[:]"

[a] An application for a special use permit shall be submitted to the Board of Adjustment by filing a copy of the application with the administrator in Development Services Department.

[b] Subject to Subsection [c], the Board of Adjustment, shall issue the requested permit unless it concludes, based upon the information submitted at the hearing, that:

[1] The requested permit is not within this jurisdiction according to the Table of Permissible Uses, or

[2] The application is incomplete, or

[3] If completed as proposed in the application, the development will not comply with one or more requirements of this ordinance (not including those the applicant is not required to comply with under the circumstances specified in Article VIII, Nonconforming Situations), or

[c] Even if the permit issuing board finds that the application complies with all other provisions of this ordinance, it may still deny the permit if it concludes, based upon the information submitted at the hearing, that if completed as proposed, the development, more probably than not:

[1] Will materially endanger the public health or safety, or

[2] Will substantially injure the value of adjoining or abutting property, or

[3] Will not be in harmony with the area in which it is to be located, or

[4] Will not be in general conformity with the comprehensive plan, thoroughfare plan, or other plan officially adopted by the council.[7]

Section 118 of the UDO, titled "Hearing Required on Appeals and Applications" states that

[a] Before making a decision on . . . an application for a . . . special-use permit, . . . the Board of Adjustment shall hold a public hearing on the . . . application.

[b] Subject to Subsection [c], the hearing shall be open to the public and all persons interested in the outcome of the appeal or the application shall be given an opportunity to present evidence and arguments and ask questions of persons who testify.

Section 120(c) of the UDO states that

---

7. UDO § 74 states the procedures for voting to approve or deny a special-use permit application and UDO § 75 grants the Board the authority to include additional requirements or conditions as part of approving a special-use permit application.

> [c] All findings and conclusions necessary to the issuance or denial of the requested permit or appeal (crucial findings) shall be based upon reliable evidence. . . .

Section 123 of the UDO, in pertinent part, states that

> [a] Any decision made by the Board of Adjustment regarding an appeal or variance or issuance or revocation of a special use permit shall be reduced to writing and served upon the applicant or appellant and all other persons who make a written request for a copy.
>
> . . . .
>
> [c] In addition to a statement of the board's ultimate disposition of the case and any other information deemed appropriate, the written decision shall state the board's findings and conclusions, as well as supporting reasons or facts, whenever this ordinance requires the same as a prerequisite to taking action.

A summary of the progression of this case highlights the superior court's error. First, the Board conducted a full hearing pursuant to UDO § 118 on 5 April and 1 May 2007. The Board heard evidence from petitioner, including testimony from the applicant James West regarding the proposed medical clinic's compliance with the UDO; diagrams and maps describing the proposed medical clinic's light fixtures, dumpster plan, building specifications, parking lot specifications, grading, and tree removal; diagrams of the surrounding neighboring residential properties; pictures showing views of the proposed building from different angles; pictures showing views of the proposed medical clinic site as viewed from different neighboring residential properties; a letter from an appraiser stating that the proposed medical clinic would not have a negative impact upon residents' surrounding properties; and a listing of properties located on a section of State Farm Road near the proposed medical clinic showing several business uses.

Pursuant to UDO § 118(b), the Board permitted eight residents to present evidence and make arguments. Most of these residents voiced opposition or concerns regarding granting petitioner's application. These comments included the following specific concerns: the proposed medical clinic is not consistent with the town's Comprehensive Plan; the development is not in harmony with the area and will affect the character of the neighborhood because the

surrounding properties are all residential homes; the lighting from the parking lot will create light pollution to the surrounding residential properties; the proposed medical facility will increase traffic volume; there is a blind curve on State Farm Road at the entrance to the proposed medical clinic; the proposed medical clinic will lower property values; the type of medical clinic was not specified and could include anything from a dentist office to a methadone clinic; and the medical facility could produce biomedical waste. Two of the residents presented evidence in the form of pictures of the area surrounding the proposed medical clinic and a traffic-count of State Farm Road on 30 April 2007 conducted by residents during three specific periods of time.

Petitioner was permitted to make final arguments and counsel for the Board made clarifying comments regarding the evidence. The hearing concluded with the Board voting in agreement that petitioner's application was complete and complied with the UDO pursuant to § 69(b)(2) and (3) but denied petitioner's application based on three concerns pursuant to UDO § 69(c). Pursuant to UDO § 123(a), the Board sent petitioner a letter on 4 May 2007, informing him that the application for the special-use permit had been denied based on UDO § 69(c). However, contrary to UDO §§ 120(c) and 123(c), the Board failed to make findings of fact to support its decision. Petitioner subsequently filed for and was granted a writ of certiorari by the superior court, which made findings of fact in its order and reversed the Board's decision. Accordingly, on appeal, this Court stated that it was error for the trial court to make findings and remanded "to the Superior Court with instructions to remand to the Board of Adjustment for reviewable findings of fact." *Templeton Props. LP*, 2009 N.C. App. LEXIS 1240 at *13-14.

On remand from this Court and the superior court, the Board held a hearing on 2 September 2010 to address this Court's ruling. The Board permitted petitioner to make arguments as to why the permit should be granted. Even though the Chairman of the Board stated that it was not his intent to reopen and hear the case "from scratch[,]" and counsel for the Board advised the Board several times that they were not to consider any new evidence at this hearing, counsel for the Board also advised the Board that since they heard arguments from petitioner, they could hear "arguments" from residents. Consequently, the Board permitted seven of the eight residents who spoke at the 5 April and 1 May 2007 hearings, including the Mayor of Boone, again to voice opposition and present evidence, including tes-

timony that the proposed medical clinic would not be in harmony with the neighborhood; removal of the trees would remove a wind buffer; construction of the proposed medical clinic could cause erosion because there is a "fault line" at the property; the neighborhood is one of the few in Boone that does not have any commercial or business uses; and the proposed medical clinic would cause a loss of property values. Additionally, five of those residents emphasized safety concerns regarding the proposed medical clinic, stating that there is a dangerous intersection at the proposed medical clinic where VFW Drive enters State Farm Road; there are "blind curves" at the entrance to the proposed medical clinic; State Farm Road has a high volume of traffic; and VFW Drive is not wide enough to support traffic for the proposed medical clinic. After discussion, the Board adopted counsel's proposed findings of fact, with "modifications" to include the following specific findings regarding safety and traffic concerns:

> 34. There is a blind curve in the area near the proposed development.
>
> 35. State Farm Road is narrow in the area and needs to be widened to 18 feet.
>
> 36. The curve of State Farm Road and the volume of traffic borne by State Farm Road presents existing hazardous conditions.
>
> 37. The further addition of traffic to that particular section of State Farm Road would be highly dangerous.

Counsel for petitioner objected at the hearing to the Board's decision to hear from residents, stating that "what you are limited to here, it seems to me, are legal arguments as to what finding you can or can't make or what findings you should or shouldn't make." Petitioner, in its 27 October 2010 petition for writ of certiorari, raised an issue regarding the procedure the Board implemented at the hearing on remand:

> 18. At the September 2, 2010 meeting, after acknowledging that the Board's actions on remand had to be based solely on the evidence presented at the April 5 and May 1, 2007 hearings, the Board nevertheless proceeded (over the Petitioner's objections) to listen to the unsworn testimony of seven opponents of the application, including the mayor of the Town of Boone.

In its order, the superior court makes no mention of this argument or the 2 September 2010 hearing but merely states that

> [o]n remand, the Board in due time adopted a September 29, 2010 written order with Findings of Fact based on evidence from the 2007 quasi-judicial hearing.

As noted above, this Court's only instruction to the superior court was for it to remand to the Board "with instructions to remand to the Board of Adjustment for *reviewable findings of fact.*" *Id.* at *14 (emphasis added). The Board stated that they were only hearing "arguments" from the residents. At the beginning of the 2 September 2010 meeting, the chairman of the Board stated that "[a]ll testimony before this board must be sworn testimony." UDO § 120(b) states that "[a]ll persons who intend to present evidence to the permit-issuance board, rather than arguments only, shall be sworn." *See Plummer v. Plummer*, 198 N.C. App. 538, 548, 680 S.E.2d 746, 753 (2009) (noting that "the arguments of counsel are not evidence" (citation and quotation marks omitted)). We note that none of these residents were sworn before they made their statements. However, not swearing the residents in and then calling their testimony "argument" did not make their comments legal argument. A careful examination of the residents' testimony shows that their statements regarding how the medical clinic would devalue their property; the lack of businesses in the neighborhood; the construction would cause erosion; and the traffic issues are not legal arguments but a presentation of the same type of factual testimony the residents were allowed to present at the original 5 April and 1 May 2007 hearings. This Court made no instruction to the Board to gather additional evidence. The *reviewable findings of fact* were to be based on the evidence presented at the 5 April and 1 May 2007 hearings and to support the Board's decision to deny petitioner's application.[8] As noted above, "[a] decision of this Court on a prior appeal constitutes the law of the case, both in sub-

---

8. At the 2 September 2010 hearing, there was some confusion as to whether the Board's decision to deny petitioner's application was based on three grounds in UDO § 69(c) mentioned by Board members at the conclusion of the 1 May 2007 meeting or on the two UDO § 69(c) grounds mentioned by Board members at the end of the 21 May 2010 "Continuation" hearing. Although discussions at the conclusion of these meetings about why individual Board members decided to deny petitioner's application were based on reasons listed in UDO § 69(c), these conversations did not amount to conclusions of law. What is clear from the record is that the Board did not approve petitioner's application and denial was based on UDO § 69(c). Therefore, the Board was free on remand on 2 September 2010 to make conclusions based on any of the grounds listed in UDO § 69(c), as long as they are supported by the findings of fact and the law.

sequent proceedings in the trial court and on a subsequent appeal." *Lea Co.*, 323 N.C. at 699, 374 S.E.2d at 868. But contrary to "the law of the case[,]" *see id*, the Board conducted a new hearing and gathered more evidence from residents on 2 September 2010 before making its findings of fact. Therefore, the superior court failed in its *de novo* review of the record, as it did not address this "error of law[.]" *See Wright*, 177 N.C. App. at 8, 627 S.E.2d at 656.

We further note that contrary to UDO § 118, the Board did not conduct a full hearing, as only residents in opposition, including the mayor, were allowed to present evidence in opposition to petitioner's special-use permit application. As noted above, part of the superior court's review is to ensure "that procedures specified by law in both statute and ordinance [were] followed[,]" and "that appropriate due process rights of the petitioner are protected, including the right to offer evidence, cross-examine witnesses, and inspect documents[.]" *See id*. N.C. Gen. Stat. § 153A-340(c1) (2009) states that when a board of adjustment makes decisions regarding special-use permits the board "shall follow quasi-judicial procedures." Even though a board of adjustment is not bound by formal rules of evidence or civil procedure, when it "conducts a quasi-judicial hearing to determine facts prerequisite to issuance of a permit, [its procedures] can dispense with no essential element of a fair trial." *Cook*, 185 N.C. App. at 594, 649 S.E.2d at 467-68 (citations and quotation marks omitted). Essential elements of a fair trial include:

> (1) The party whose rights are being determined must be given the opportunity to *offer evidence*, cross-examine adverse witnesses, inspect documents, and offer evidence in explanation and rebuttal; (2) absent stipulations or waiver such a board may not base findings as to the existence or nonexistence of crucial facts upon unsworn statements; and (3) crucial findings of fact which are "unsupported by competent, material and substantial evidence in view of the entire record as submitted" cannot stand.

*Humble Oil & Refining Co.*, 284 N.C. at 470, 202 S.E.2d at 137 (citation omitted and emphasis added). Although petitioner's counsel was permitted to make arguments at the 2 September 2010 hearing on remand, he did not get a second chance to present evidence, unlike the residents who testified opposing the special-use permit. Also it appears that the residents' testimony did have some influence on the Board in making its decision, as five of the seven residents got to

reemphasize their complaints regarding how the traffic situation around the proposed medical clinic would pose a safety danger to the public and the transcript from the hearing shows that the Board modified the proposed findings to include the specific concerns raised by these residents. Therefore, we cannot say that petitioner received a "fair trial" at this hearing. *See id.* Accordingly, the superior court erred in its *de novo* review as it did not address these violations of procedure and petitioner's due process rights. *See Wright,* 177 N.C. App. at 8, 627 S.E.2d at 656. Due to this error, we cannot proceed with addressing the parties' substantive arguments until the Board makes its reviewable findings of fact. Therefore, as the superior court did not properly address in its *de novo* review these errors, we reverse the superior court's order and remand to the superior court for remand to the board of adjustment with instruction again to make reviewable findings of fact in accordance with this opinion. Specifically, the board of adjustment must make its findings of fact based only upon the testimony and evidence presented at the hearings held on 5 April and 1 May 2007. The Board may on remand consider legal arguments regarding the application of the law to the factual evidence presented at the hearing in 2007 but may not receive additional factual testimony or evidence, sworn or unsworn.

REVERSED AND REMANDED.

Judges STEPHENS and BEASLEY concur.