MORRIS COMMUNICATIONS CORPORATION d/b/a FAIRWAY OUTDOOR ADVERTISING, Petitioner v. CITY OF BESSEMER CITY ZONING BOARD OF ADJUSTMENT, Respondent

No. COA09-440

(Filed 2 March 2010)

## 1. Zoning— board of adjustment—de novo standard of review

The superior court did not err by finding that a city zoning board of adjustment's interpretation of a zoning ordinance was entitled to some deference under a *de novo* standard of review. It was consistent with the standard of review for interpretation of a local zoning ordinance.

## 2. Zoning— validity of building permit—billboard

A whole record test revealed that the superior court did not err by concluding that a billboard was in violation of a zoning ordinance amendment even though petitioner Fairway contended it possessed an unexpired and unrevoked building permit from Gaston County. There was no physical construction on

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

the site during the six months after issuance of the sign permit, and there was no work on the property until months after the sign permit expired.

### 3. Zoning— sign permit—building permit—vested rights

Petitioner Fairway cannot rely upon a mistakenly issued permit to establish vested rights in its nonconforming use of the property. Although the building permit was not revoked at the time of the ordinance amendment, the county building inspector who issued the renewed permit testified that because Fairway did not possess a valid sign permit, the renewed permit was issued by mistake and was thus invalid under N.C.G.S. § 160A-385(b)(i).

### 4. Zoning— removal of billboard—detrimental reliance—invalid renewed permit—equitable estoppel

The superior court did not err by concluding that the City and the board of adjustment were not equitably estopped from ordering the removal of a billboard even though petitioner Fairway detrimentally relied upon an invalid renewed permit. A municipality cannot be estopped to enforce a zoning ordinance against a violator by the conduct of its officials in encouraging or permitting such violator to violate such ordinance.

### 5. Zoning— ordinance amendment—billboard—nonconforming use

The superior court did not err by failing to conclude that the nonconforming provisions of an ordinance prohibited the relocation of a billboard. The pertinent billboard was a nonconforming sign after an ordinance amendment passed. Only the interchange of the actual changeable sign sections of a billboard are allowed in order to maintain an existing nonconforming use.

### 6. Zoning— board of adjustment decision—competent, material, and substantial evidence—whole record test

A whole record test revealed the superior court did not err by concluding that a board of adjustment's decision was supported by competent, material, and substantial evidence, and was otherwise not arbitrary or capricious.

Judge HUNTER, Robert C., dissenting.

Appeal by petitioner from order entered 31 October 2008 by Judge Thomas W. Seay, Jr. in Gaston County Superior Court. Heard in the Court of Appeals 14 October 2009.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus and Lindsay P. Thompson, for petitioner-appellant.*

*Gray, Layton, Kersh, Solomon, Furr & Smith, P.A., by David W. Smith, III and Michael L. Carpenter, for respondent-appellee.*

CALABRIA, Judge.

Morris Communications Company d/b/a Fairway Outdoor Advertising ("Fairway") appeals from an order affirming the decision of the City of Bessemer City Zoning Board of Adjustment's ("the BOA") decision requiring the removal of petitioner's billboard. We affirm.

## I. Facts

Fairway leases a parcel of land ("the property") in Bessemer City, North Carolina ("the City"), for the purpose of using and maintaining a billboard ("the billboard"). Prior to July 2005, the billboard was lawfully erected on the property. In July 2005, the North Carolina Department of Transportation ("NCDOT") condemned a portion of the property for a road widening project ("the project"). As a result of the condemnation, Fairway was required to move the billboard to another part of the property.

In order to relocate the billboard, Fairway applied to the City for a sign permit ("the sign permit"). The sign permit was issued on 31 August 2005 and indicated an "Expire Date" of 27 February 2006. By the terms of § 155.207 of the City's Zoning Ordinance ("the Ordinance"),

> [i]f the work described in any compliance or sign permit has not begun within six months from the date of issuance thereof, the permit shall expire. Upon beginning a project, work must be diligently continued until completion with some progress being apparent every three months. If such continuance or work is not shown, the permit will expire.

On 21 November 2005, Fairway applied to Gaston County for a building permit ("the building permit"). The building permit was issued on 13 December 2005[1] and contained, *inter alia*, the following language: "This permit becomes null and void if work or construction

---

1. The 13 December 2005 building permit is not contained in the record on appeal. However, the record does contain a renewed building permit that indicates the original building permit was issued on 13 December 2005.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

authorized is not commenced within 6 months, or if construction or work is suspended, or abandoned for a period of 1 year at any time after work is started." The building permit additionally informs the permit holder that "[g]ranting of a permit *does not presume to give authority to violate or cancel the provisions of any other state or local law regulating construction or the performance of construction.*" (Emphasis added).

On 8 June 2006, Gaston County renewed the building permit ("the renewed permit") until 8 December 2006. On 12 June 2006, the City passed an amendment to the Ordinance ("the amendment") that banned billboards in the City. With the adoption of the amendment, the billboard became a nonconforming sign.

On 13 June 2006, Fairway took down the billboard in anticipation of the project. After the project was completed, Fairway relocated the billboard in its new location on 6 December 2006. Except for the footings, the billboard was the same sign that had been previously taken down by Fairway before the project began.

On 16 January 2007, the City sent Fairway a Notice of Violation ("the NOV") regarding the billboard. According to the City, the relocation of the billboard violated the amendment. The NOV also stated that Fairway's sign permit had expired and that the renewed permit was void as a result. Fairway appealed the NOV to the BOA, which affirmed the NOV on 7 May 2007 and entered a written order requiring the billboard's removal.

On 10 August 2007, the superior court of Gaston County, by consent of the parties, issued a Writ of Certiorari in order to review the BOA's decision. On 31 October 2008, the superior court entered an order and judgment affirming the decision of the BOA. Fairway appeals.[2]

## II. Standard of Review

Upon reviewing a decision by a board of adjustment, the superior court's scope of review includes: (1) Reviewing the record for

---

2. As an initial matter, we note that the facts of the instant case are similar to the facts in *Lamar OCI South Corp. v. Stanly Cty. Zoning Bd. of Adjust.*, 186 N.C. App. 44, 650 S.E.2d 37 (2007), *aff'd per curiam in part and disc. review improvidently allowed in part*, 362 N.C. 670, 669 S.E.2d 322 (2008). In *Lamar*, this Court held that the NCDOT's billboard regulations preempted any conflicting local zoning ordinances and allowed a nonconforming sign to be relocated under NCDOT regulations. *Id.* at 50-53, 650 S.E.2d at 41-43. However, the record in the instant case indicates that NCDOT regulations did not apply to the billboard at issue. Therefore, the analysis in *Lamar* is not applicable.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

errors in law, (2) Insuring that procedures specified by law in both statute and ordinance are followed, (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents, (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and (5) Insuring that decisions are not arbitrary and capricious. Depending upon the nature of the alleged error, the superior court must apply one of two standards of review in an administrative appeal of a decision by a board of adjustment. Where the petitioner asserts that the board's decision is based on an error of law, *de novo* review is proper. If the petitioner contends that the board's decision is arbitrary or capricious, or is unsupported by the evidence, the court applies the whole record test.

*E. Outdoor, Inc. v. Bd. of Adjust. of Johnston Cty.*, 150 N.C. App. 516, 518, 564 S.E.2d 78, 79-80 (2002) (internal quotations and citations omitted). "When this Court reviews such appeals from the superior court, our review is limited to determining whether (1) the superior court determined the appropriate scope of review and (2) whether the superior court, after determining the proper scope of review, properly applied such a standard." *Id.* at 518, 564 S.E.2d at 80.

### III. *De novo* Review

[1] Fairway argues that the superior court erred in finding that the BOA's interpretation of the Ordinance is entitled to some deference under a *de novo* standard of review. We disagree.

In its order, the superior court stated: "In interpreting the applicable ordinances, the [BOA]'s decision is entitled to some deference so long as [the BOA] did not act arbitrarily, oppressively, manifestly abuse its authority, or commit an error of law." Fairway contends that this deference is inconsistent with a *de novo* review.

Where the petitioner alleges that a board decision is based on error of law, the reviewing court must examine the record *de novo*, as though the issue had not yet been determined. However, one of the functions of a Board of Adjustment is to interpret local zoning ordinances, and [the BOA]'s interpretation of its own ordinance is given deference. Therefore, our task on appeal is not to decide whether another interpretation of the ordinance might reasonably have been reached by the board, but to

636 IN THE COURT OF APPEALS

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

decide if the board acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law in interpreting the ordinance.

*Whiteco Outdoor Adver. v. Johnston Cty. Bd. of Adjust.*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999) (internal quotations and citations omitted). The standard of review included in the superior court's order is clearly consistent with the standard of review for interpretation of a local zoning ordinance as established by this Court. This assignment of error is overruled.

### IV. Validity of Building Permit

[2] Fairway argues that the superior court erred by concluding that the billboard was in violation of the amendment because Fairway possessed an unexpired and unrevoked building permit from Gaston County. We disagree.

After the amendment, the Ordinance § 155.163(A) stated, in relevant part:

> No sign shall hereafter be erected, attached to, suspended from, or supported on a building or structure; *nor shall any existing sign be enlarged, relocated, or otherwise altered; nor shall any building permit be issued for such purposes until a sign permit for same has been issued by the Zoning Administrator* . . . .

(Emphasis added). In the instant case, the parties agree a valid sign permit was issued to Fairway on 31 August 2005. The parties do not agree on whether that permit was still in effect when Fairway renewed its building permit in June 2006.

The validity of Fairway's sign permit at the time it obtained the renewed permit is a mixed question of law and fact. The BOA's statutory interpretation of "work" in the Ordinance is a question of law reviewed under the standard articulated in *Whiteco*. Whether Fairway's action constituted "work" as defined by the Ordinance is a question of fact that is reviewed using the whole record test.

### A. Definition of work

Under § 155.207 of the Ordinance, "[i]f the work described in any compliance or sign permit has not begun within six months from the date of issuance thereof, the permit shall expire." The BOA concluded that Fairway did not commence any "work" on the billboard in the six

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

months after the sign permit was issued on 31 August 2005 and therefore the sign permit was expired at the time Fairway attempted to renew the building permit.

Kevin Krouse, the City Zoning Administrator ("Krouse"), testified that he saw no signs of work on the property until December 2006, long after the sign permit would have expired by its terms. Krouse defined "work" as "actually something moving on the ground . . . [c]onstruction." The BOA affirmed the opinion of Krouse and ordered the billboard removed.

Fairway argues that the BOA should not have relied upon the definition of "work" offered by Krouse. As previously noted, this Court gives the BOA's interpretation of its own ordinance deference. *CG&T Corp. v. Bd. of Adjust. of Wilmington*, 105 N.C. App. 32, 39, 411 S.E.2d 655, 659 (1992). We need not decide whether another interpretation of the ordinance might reasonably have been reached by the BOA. *Whiteco*, 132 N.C. App. at 470, 513 S.E.2d at 74.

"When statutory language is clear and unambiguous, [w]ords in a statute must be construed in accordance with their plain meaning unless the statute provides an alternative meaning." *Procter v. City of Raleigh Bd. of Adjust.*, 140 N.C. App. 784, 785-86, 538 S.E.2d 621, 622 (2000) (internal quotations and citation omitted). The Ordinance itself does not define "work." However, the Ordinance § 155.163 requires a sign permit to be issued any time a sign is "erected, attached to, suspended from, or supported on a building or structure" or when an existing sign is "enlarged, relocated, or otherwise altered." Since the purpose of a sign permit is to allow the construction or physical alteration of a sign, it does not appear that the BOA's definition of "work" for the purposes of maintaining a valid sign permit, "something moving on the ground . . . [c]onstruction," is an unreasonable interpretation or otherwise the result of an error of law.

B. Fairway's "work"

Using the BOA's definition of "work," we must now determine whether the BOA properly concluded that Fairway's actions did not constitute "work." This determination requires the use of the whole record test.

This test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the [Board's] decision is supported by substantial evidence.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

> Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The reviewing court should not replace the [Board's] judgment as between two reasonably conflicting views; [w]hile the record may contain evidence contrary to the findings of the [Board], this Court may not substitute its judgment for that of the [Board].

*Coucoulas/Knight Props., LLC v. Town of Hillsborough*, —— N.C. App. ——, ——, 683 S.E.2d 228, 230 (2009) (citation omitted).

In the instant case, there is sufficient evidence in the whole record to support the BOA's decision. Fairway does not dispute that there was no physical construction on the site during the six months after issuance of the sign permit. Fairway presented evidence that it conducted negotiations with NCDOT and the owner of the property regarding where it would move the billboard, but at the same time admitted that it did not inform the City of these ongoing negotiations. Krouse testified that he observed no work on the property until months after the sign permit expired. This is enough evidence "as a reasonable mind might accept as adequate to support a conclusion" and the decision of the BOA should therefore not be disturbed.

### V. Vested Rights

[3] Because the sign permit had expired before Fairway renewed its building permit in June 2006, it could not validly renew its Gaston County building permit under the express terms of the Ordinance § 155.163. The BOA argues that the building permit was therefore void. Fairway argues that until the invalid permit was revoked pursuant to N.C. Gen. Stat. § 160A-422 (2007), it has established statutory vested rights under N.C. Gen. Stat. § 160A-385(b)(i) (2007).

N.C. Gen. Stat. § 160A-422 delineates the procedure for the revocation of permits.

> The appropriate inspector may revoke and require the return of any permit by notifying the permit holder in writing stating the reason for the revocation. Permits shall be revoked for any substantial departure from the approved application, plans, or specifications; for refusal or failure to comply with the requirements of any applicable State or local laws; or for false statements or misrepresentations made in securing the permit. *Any permit mistakenly issued in violation of an applicable State or local law may also be revoked.*

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

N.C. Gen. Stat. § 160A-422 (2007) (emphasis added). The BOA argues that revocation of the renewed permit was unnecessary because it was void *ab initio*. This interpretation would render the portion of N.C. Gen. Stat. § 160A-422 emphasized above superfluous. "Such statutory construction is not permitted, because a statute must be construed, if possible, to give meaning and effect to all of its provisions." *HCA Crossroads Residential Ctrs. v. North Carolina Dep't of Human Res.*, 327 N.C. 573, 578, 398 S.E.2d 466, 470 (1990). Therefore, the proper way to revoke a building permit, even a permit issued in violation of a state or local law, is by following the statutory revocation procedure of N.C. Gen. Stat. § 160A-422.

In the instant case, it is undisputed that Fairway's building permit was not revoked pursuant to N.C. Gen. Stat. § 160A-422 until after the amendment was passed. Fairway argues that because it possessed an unrevoked building permit at the time of the amendment, it is entitled to vested rights under N.C. Gen. Stat. § 160A-385(b), which states, in relevant part:

> Amendments in zoning ordinances shall not be applicable or enforceable without consent of the owner with regard to buildings and uses for which . . . (i) building permits have been issued pursuant to G.S. 160A-417 prior to the enactment of the ordinance making the change or changes *so long as the permits remain valid* and unexpired pursuant to G.S. 160A-418 and unrevoked pursuant to G.S. 160A-422 . . . .

N.C. Gen. Stat. § 160A-385(b) (2007) (emphasis added). Although the building permit was not revoked at the time of the amendment, the Gaston County building inspector who issued the renewed permit testified that because Fairway did not possess a valid sign permit, the renewed permit was issued by mistake, contrary to applicable law, and was therefore invalid. An invalid permit does not qualify for statutory rights according to the express language of N.C. Gen. Stat. § 160A-385(b)(i).

This result is also supported by previous holdings of this Court. "Permits unlawfully or mistakenly issued do not create a vested right." *Clark Stone Co. v. N.C. Dep't of Env't & Natural Res.*, 164 N.C. App. 24, 40, 594 S.E.2d 832, 842 (2004); *see also Raleigh v. Fisher*, 232 N.C. 629, 635, 61 S.E.2d 897, 902 (1950). Thus, Fairway cannot rely upon a mistakenly issued permit to establish vested rights in its nonconforming use of the property. This assignment of error is overruled.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

## VI.  Equitable Estoppel

**[4]** Fairway argues that the superior court erred in concluding that the City and the BOA were not equitably estopped from ordering the removal of the billboard. We disagree.

It has been established that the building permit renewal was issued by mistake, contrary to the express terms of the Ordinance. Fairway correctly argues that it relied upon this invalid renewed permit to its detriment. However, in such a situation, our Supreme Court has held, "a municipality cannot be estopped to enforce a zoning ordinance against a violator by the conduct of its officials in encouraging or permitting such violator to violate such ordinance in times past." *Fisher*, 232 N.C. at 635, 61 S.E.2d at 902 (citations omitted); *see also Helms v. Charlotte*, 255 N.C. 647, 652, 122 S.E.2d 817, 821 (1961). The *Fisher* Court, acknowledging the hardship that this rule can create, succinctly explained the reasoning behind it:

> Undoubtedly this conclusion entails much hardship to the defendants. Nevertheless, the law must be so written; for a contrary decision would require an acceptance of the paradoxical proposition that a citizen can acquire immunity to the law of his country by habitually violating such law with the consent of unfaithful public officials charged with the duty of enforcing it.

*Fisher*, 232 N.C. at 635, 61 S.E.2d at 902. This assignment of error is overruled.

## VII.  Nonconforming Provisions of the Ordinance

**[5]** Fairway argues that the superior court erred by failing to conclude that the nonconforming provisions of the Ordinance did not prohibit the relocation of the billboard. We disagree.

As previously noted, § 155.163(A) of the Ordinance provides that:

> No sign shall hereafter be erected, attached to, suspended from, or supported on a building or structure; nor shall any existing sign be enlarged, relocated, or otherwise altered; nor shall any building permit be issued for such purposes until a sign permit for same has been issued by the Zoning Administrator. . . .

The parties agree that the billboard was a nonconforming sign after the amendment was passed. By the terms of the Ordinance, structural changes, including relocations, are not permitted, even for conforming uses, without a valid sign permit and a valid building permit.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

Fairway did not possess a valid version of either of these permits at the time it relocated its billboard.

Additionally, § 155.172 of the Ordinance, entitled "Nonconforming Signs," provides that:

(A) *Existing nonconforming sign.* A non-conforming sign . . . shall not be replaced by another non-conforming sign except that the substitution or inter-change of poster panels, painted boards, or demount-able material on nonconforming signs shall be permitted. . . .

Therefore, only the interchange of the actual changeable sign sections of a billboard are allowed in order to maintain an existing nonconforming use. The relocation of the billboard by Fairway went well beyond the interchange of sign sections and Fairway could not maintain an existing nonconforming use on this basis. This assignment of error is overruled.

## VIII. Whole Record

[6] Fairway finally argues that the superior court erred in concluding that the BOA's decision was supported by competent, material, and substantial evidence and was otherwise not arbitrary or capricious. We disagree.

Specifically, Fairway argues that the superior court erred by upholding the BOA's findings that Fairway had done no "work" to maintain its right to the sign permit and by upholding the BOA's finding that Fairway possessed no statutory vested rights. These contentions have been previously considered and found to be without merit. There is substantial evidence in the whole record to support the BOA's findings and its decision was the result of the application of correct legal principles. This assignment of error is overruled.

Affirmed.

Judge GEER concurs.

Judge HUNTER, Robert C. dissents by separate opinion.

HUNTER, Robert C., Judge, dissenting

After careful review, I dissent from the majority opinion because I disagree with the majority's position on the definition of "work."

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

While we give deference to the City Board of Adjustment's ("BOA") own interpretation of its ordinances, we are not required to accept that interpretation, under *de novo* review, if it is arbitrary or constitutes an error of law. Here, the BOA committed an error of law when it accepted Kevin Krouse's ("Krouse") claim that "work" means construction. Work should not be so narrowly defined and can include actions that do not result in construction on the site. Under these circumstances I would remand this case to the trial court with instructions to remand to the BOA to determine if petitioner had begun "work" under a broader definition. If petitioner had begun work within six months after the sign permit was originally issued, then the subsequently renewed building permit would have been valid at the time the sign was relocated.

## Facts

On or about 11 July 2005, the North Carolina Department of Transportation ("DOT") filed a Notice of Taking and Complaint for a road widening project, which effectively condemned a portion of Gastonia Highway where Fairway's billboard was located. The roadway contract was expected to be awarded on 19 June 2006. Fairway was required by DOT to move the billboard to a new location by 15 March 2006.

On 26 August 2005, Fairway applied for a City of Bessemer City Zoning Permit (the "sign permit"), which was then issued on 31 August 2005. On 21 November 2005, Fairway applied for a Gaston County Building Permit (the "building permit"), which was then issued on 13 December 2005. Fairway contends that after the permits were issued, it continued negotiations with DOT regarding the exact location of the road widening project and where the billboard could be relocated. Fairway also claims that negotiations were taking place between Fairway and the land owner for a new lease agreement. Additionally, a "NAPA" building was also located on the proposed right of way and there was some uncertainty as to where that building would be relocated on the parcel.

On 2 March 2006, Fairway generated a Work Order to take down the existing billboard on 13 June 2006.. On 9 March 2006 Fairway sent a letter to DOT stating that it "would like to schedule the removal of this sign for (No Later Than) Tuesday, June 13th 2006."[3] On 28 April 2006, Fairway entered into a new lease for the

---

3. DOT's response is not included in the record.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

relocated billboard with the land owner on the same parcel of land along Gastonia Highway.

On 8 June 2006, Fairway received a renewal of its building permit. On 12 June 2006, the City of Bessemer (the "City") adopted a new ordinance banning billboards within the City's zoning jurisdiction. At that point, Fairway's existing billboard became a nonconforming sign. On 13 June 2006, Fairway removed the billboard from its original location and stored it. On 6 December 2006, Fairway completed relocation of the billboard. On 16 January 2007, Fairway received the first notice of violation from the City's attorney.

## Discussion

Pursuant to Bessemer City Ordinance § 155.163(A), a building permit cannot be issued "until a sign permit for same has been issued . . . ." A valid sign permit was issued to Fairway on 31 August 2005. Ordinance § 155.207 states:

> If the work described in any compliance or sign permit has not begun within six months from the date of issuance thereof, the permit shall expire. Upon beginning a project, work must be diligently continued until completion with some progress being apparent every three months. If such continuation or work is not shown, the permit will expire.

The BOA held that the sign permit expired six months after it was issued because Fairway had not begun any work under Ordinance § 155.207, and, therefore, the building permit that was renewed in June 2006 was not valid. The majority holds that without a valid building permit, Fairway does not have a statutorily vested right pursuant to N.C. Gen. Stat. § 160A-385(b) (2007) to relocate the sign. It follows that if Fairway had begun work within six months of the issuance of the sign permit, the renewed building permit would be valid and Fairway would have a vested right to relocate the sign as mandated by DOT.

The term "work" is not defined in the City's ordinances. At the hearing before the BOA, Krouse, the City Zoning Administrator, testified that, pursuant to his interpretation of the ordinance, work meant "construction." Fairway admits that no construction occurred during the six months after the sign permit was issued because they did not have a new lease signed and final negotiations with DOT had not taken place; however, Fairway contends that "work" does not necessarily mean that a physical alteration must occur at the site. I agree.

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

"Zoning regulations are in derogation of common law rights and they cannot be construed to include or exclude by implication that which is not clearly their express terms." *Cumulus Broadcasting, LLC v. Hoke County Bd. of Comm'rs*, 180 N.C. App. 424, 427, 638 S.E.2d 12, 15 (2006) (quoting *Yancey v. Heafner*, 268 N.C. 263, 266, 150 S.E.2d 440, 443 (1966)); *see also Lambeth v. Town of Kure Beach*, 157 N.C. App. 349, 354, 578 S.E.2d 688, 691 (2003) ("Zoning ordinances derogate common law property rights and must be strictly construed in favor of the free use of property.").

The majority aptly states that the interpretation of "work" is a question of law reviewed *de novo*, and whether Fairway's actions constituted "work" is a question of fact that is reviewed using the whole record test. The majority is also correct in its assertion that the BOA's interpretation of its own ordinance is entitled to some deference under a *de novo* standard of review. *See Whiteco Outdoor Adver. v. Johnson Cty. Bd. of Adjustment*, 132 N.C. App. 465, 470, 513 S.E.2d 70, 74 (1999). "Therefore, our task on appeal is not to decide whether another interpretation of the ordinance might reasonably have been reached by the board, but to decide if the board acted arbitrarily, oppressively, manifestly abused its authority, or committed an error of law in interpreting the ordinance." *Id.* (citation and quotation marks omitted). I find that the Board in this case committed an error of law in defining "work" to be synonymous with construction.

In *Town of Hillsborough v. Smith*, 276 N.C. 48, 55, 170 S.E.2d 904, 909 (1969), our Supreme Court held that the visible commencement of construction was not the only means by which a permit holder could preserve his or her rights under a zoning permit. Entering into contractual obligations, the purchase of building materials, expenditures of money, or other activities could preserve the permit holder's rights even where there was no "visible change in the condition of the land." *Id.* The Court reasoned that

> [i]t is not the giving of notice to the town, through a change in the appearance of the land, which creates the vested property right in the holder of the permit. The basis of his right to build and use his land, in accordance with the permit issued to him, is his change of his own position in bona fide reliance upon the permit.

*Id.* Here, there was no visible change in the land before the billboard was physically moved; however, it is important to recognize that in this particular circumstance, aside from installing new "footings" and

MORRIS COMMC'NS CORP. v. CITY OF BESSEMER CITY ZONING BD. OF ADJUST.

[202 N.C. App. 631 (2010)]

re-erecting the billboard, there was no construction that could have been performed on the new site. The old billboard was simply relocated, not fully reconstructed anew. This situation is different from the building of an office or other commercial property where construction visibly begins and continues for some time. In that circumstance most of the "work" conducted would be visible construction. That is not the case here. It appears from the record in this case that after the footings were installed, the billboard was re-erected in one day. The "work" involved in conducting that move was, arguably, performed behind the scenes.

In *Flowerree v. City of Concord*, 93 N.C. App. 483, 485, 378 S.E.2d 188, 189 (1989), this Court considered a non-conforming duplex under the City of Concord's Zoning Ordinance, which stated that discontinuance of a non-conforming use for more than three months would result in loss of non-conforming rights. In that case, the tenants of the lawful nonconforming duplex had moved out and the utilities were turned off. *Id.* at 484, 378 S.E.2d at 189. This Court affirmed the trial court's decision to reverse the City of Concord's denial of plaintiffs' application for an occupancy permit and held, "[w]hile there was an interruption in occupancy, there was no 'cessation of use within' the meaning . . . of the . . . Zoning Ordinance" since the "non-occupancy resulted from factors beyond petitioners [sic] control" and petitioners continued to look for tenants and made some repairs to the property to make it more marketable. *Id.* at 486, 378 S.E.2d at 190. In *Flowerree*, "cessation of use" was not synonymous with "unoccupied" where efforts were being made behind the scenes to comply with the ordinance. Similarly in the present case, "work" is not synonymous with "construction" as a matter of law.

Furthermore, "[w]hen statutory language is clear and unambiguous, 'words in a statute must be construed in accordance with their plain meaning unless the statute provides an alternative meaning.' " *Procter v. City of Raleigh Bd. of Adjust.*, 140 N.C. App. 784, 785-86, 538 S.E.2d 621, 622 (2000) (quoting *Kirkpatrick v. Village Council*, 138 N.C. App. 79, 86, 530 S.E.2d 338, 343 (2000)). According to a common dictionary definition, "work" means "[p]hysical or mental effort or activity directed toward the production or accomplishment of something." *The American Heritage Dictionary* 1554 (3rd ed. 1997). "Construction" is defined as "[t]he act or process of constructing" or "[t]he way in which something is built or put together." *Id.* at 299. "Construction" is thus limited to physical acts of assembly while the plain meaning of "work" does not require a physical manifestation of

one's efforts. Contrary to the BOA's determination, the two terms are not synonymous.

Additionally, the building permit states that the permit would expire if "work *or* construction authorized [was] not commenced within 6 months . . ." (Emphasis added.) Clearly, a distinction was made between work and construction. Had the City wanted to require the sign permit holder to begin "construction" within six months, it should have used that term in the ordinance. In sum, I find that work is not synonymous with construction alone and may include other efforts or preparations that are not visible on the site.

Fairway claims that between August 2005 and February 2006 it was actively carrying out the steps necessary in order to begin the physical relocation of the Billboard. Fairway argues that the "work" performed included: (1) applying for a building permit and subsequent renewal thereof; (2) negotiating with DOT over the relocation and compensation for moving the billboard; and (3) re-negotiating its lease with the landowner. Fairway points out that it could not begin construction prior to renegotiating its lease and obtaining funding guarantees from DOT. Also, the NAPA building that was located on the same parcel had to be relocated as well, which further delayed Fairway's relocation.

At this juncture, I decline to determine whether Fairway's actions constituted work or whether it complied with Ordinance § 155.207; rather, I would remand this case to the trial court with instructions to remand it to the BOA so that it may re-examine the issue under a broader definition of work.