NO. COA13-1274

NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

TEMPLETON PROPERTIES LP,
      Petitioner,

v.                                    Watauga County
                                      No. 12 CVS 665
TOWN OF BOONE,
      Respondent.


      Appeal by respondent from order entered 7 August 2013 by

Judge Shannon R. Joseph in Watauga County Superior Court.  Heard

in the Court of Appeals 20 March 2014.


      *The Brough Law Firm, by Michael B. Brough; and di Santi
      Watson Capua & Wilson, by Anthony S. di Santi and Chelsea
      B. Garrett, for Petitioner-appellee.*

      *Parker Poe Adams & Bernstein, LLP, by Anthony Fox and
      Benjamin R. Sullivan, for Respondent-appellant.*


      HUNTER, JR., Robert N., Judge.


      The Town of Boone ("Boone") appeals the superior court's 7

August 2013 order reversing a decision of the Town of Boone's

Board of Adjustment ("Board") that denied Templeton Properties

L.P.'s ("Templeton") application for a zoning permit.  We

reverse the superior court's order.

## I. Facts & Procedural History

      This is the third time this Court has reviewed this case.

*See* Templeton Properties, L.P. v. Town of Boone, ___ N.C. App. ___, ___, 724 S.E.2d 604, 605 (2012) ("Templeton II"); *Templeton Properties LP v. Town of Boone*, 198 N.C. App. 406, 681 S.E.2d 566, 2009 WL 2180620 (2009) (unpublished) ("Templeton I").

The dispute centers around Templeton's 2.9 acre lot ("the Parcel") in Boone at 315 State Farm Road. The Parcel is zoned for single-family residential use ("R-1"), but has historically been used as a church under a special use permit. *Templeton I*, 2009 WL 2180620 at *1. The church is 2,250 square feet and is located between State Farm Road and VFW Drive in Boone, which provide routes of access to the Parcel. *Id.* The surrounding neighborhood is "composed of mostly single-family residences," except for a non-residential VFW hall located near the Parcel. *Id.* Under section 165 of Boone's then-existing unified development ordinance ("UDO"), medical clinics over 10,000 square feet were allowed in R-1 zoning with a valid special use permit. Applications for special use permits may be denied by the Board upon showing of at least one of four reasons set forth in UDO § 69(c), namely that the development

> (1) Will materially endanger the public health or safety, or
>
> (2) Will substantially injure the value of adjoining or abutting property, or

(3) Will not be in harmony with the area in which it is to be located, or

(4) Will not be in general conformity with the comprehensive plan, thoroughfare plan, or other plan officially adopted by the council.

On 28 September 2006, Templeton submitted an application to Boone to obtain a special use permit to place a 13,050 square foot medical clinic on the Parcel. *Id.* The Board denied the application as incomplete. *Id.* Templeton modified its application and resubmitted it on 2 March 2007 to address the Board's concerns, including decreasing the clinic's size to 10,010 square feet, the current proposed size of the clinic. *Id.*

On 1 May 2007 the Board rejected Templeton's application. *Templeton II*, ___ N.C. App. at ___, 724 S.E.2d at 606. The Watauga County Superior Court granted a writ of certiorari and then entered an order on 7 July 2008 reversing the Board's denial of Templeton's application for the special use permit. *Id.* Boone appealed to this Court and we remanded to the Board to issue reviewable findings of fact in *Templeton I*. *Id.* at ___, 724 S.E.2d at 606-07.

On 2 September 2010, the Board met to make findings of fact relating to the special use permit after the remand. *Id.* After

taking testimony from residents and Templeton's counsel, the Board made findings of fact and approved them via a written decision on 29 September 2010. *Id.* On 27 October 2010, Templeton appealed the Board's decision to the superior court by petition for writ of certiorari, which was granted the same day. *Id.* On 21 February 2011, the superior court affirmed the Board's decision. *Id.* Templeton then appealed the superior court's decision to this Court, resulting in *Templeton II*. *Id.* This Court remanded in *Templeton II* and required the Board to "make reviewable findings of fact . . . based only upon the testimony and evidence presented at the hearings held on 5 April and 1 May 2007" due to defects in additional testimony taken by the Board after the first remand. *Id.* at ___, 724 S.E.2d at 614. We adopt the remaining statements of fact and procedural history in *Templeton I* and *Templeton II*.

On remand, the Board again denied Templeton's application for a special use permit on 4 October 2012 via an identical order as we considered in *Templeton II*. The Board made twenty-one findings of fact relating to the proposed clinic's lack of harmony within the order:

> 3. Templeton's proposed clinic would be 10,010 square feet in size and would have 67 parking spaces distributed among four different parking lots.

4. The clinic and its parking lots would have 23 light poles. These light poles would produce a glow at night visible from neighborhood residents' homes and yards. Further, some people in the surrounding neighborhood live on properties that are at a higher elevation than the Lot, and those people would look down on the well-lit clinic. The shields that Templeton proposed for the poles' light bulbs would not prevent light from bleeding into the neighborhood.

5. Templeton plans for employees and patients to access the clinic from State Farm Road, and Templeton plans to add a left-turn lane from State Farm Road into the clinic.

6. The clinic would have a large dumpster pad, though Templeton did not specify how many dumpsters would be on this pad.

7. Templeton had not found a tenant for the clinic and did not know what kind of medical procedures would be performed there or what types of medical wastes might be produced. Templeton did acknowledge, however, that some wastes produced at the clinic could be hazardous.

8. The only development currently on the Lot is a 2,250 square-foot church. The church has few lights, and it generally has traffic only on weekends.

9. The area surrounding the Lot is predominantly zoned R-1 Single Family Residential. The surrounding area has been almost uniformly zoned R-1 Single Family Residential since the Town first adopted zoning for the area in 1979.

10. The area surrounding the Lot is a

residential neighborhood, one of [the] oldest in Boone. It is more consistently residential, with fewer non-residential developments, than other residential neighborhoods in Town. The Lot's surrounding area also has more preserved trees and vegetation than other areas in Boone.

11. Next door to the Lot is a VFW hall. Although the VFW hall is non-residential, it is grandfathered because it was built before Boone adopted zoning in 1979.

12. Except for the VFW hall, properties in the Lot's surrounding area are almost all single-family homes.

13. During the hearing, Templeton offered the results of a survey that it had conducted of development along a stretch of State Farm Road. Some properties in this survey were non-residential.

14. However, Templeton's survey was not limited to the area where the clinic would be located. Instead, Templeton's survey extended almost a mile away from the Lot, into other areas of Town. The survey also focused on properties fronting State Farm Road, which caused it to exclude many properties that, although not fronting on the road, were still part of the area where the clinic would be located.

15. Templeton's survey did not accurately reflect the character of the area in which the clinic would be located.

16. The Lot's surrounding area is separated from less residential parts of Boone, including those less residential parts covered in Templeton's survey, by distance, topography, and the curves in State Farm

Road. As a result, the Lot's surrounding area is a distinct and separate residential neighborhood.

17. Templeton's appraiser, in describing the Lot's surrounding area, also concluded that the only developments in the surrounding area were the VFW hall and single-family homes.

18. The Lot's surrounding area has no medical buildings, offices, or commercial developments.

19. The clinic would introduce a busy commercial operation into an area that is overwhelmingly residential in character.

20. At 10,010 square feet, the clinic would be much larger than the single family homes that predominate in the surrounding area.

21. The clinic would produce far more traffic than other properties in the Lot's surrounding area and would produce a level of traffic out-of-character for that area.

22. No properties in the Lot's surrounding area produce as much light as the clinic would produce. The clinic's lighting would not be in keeping with the type and level of lighting currently found in the surrounding area.

23. Templeton's proposed clinic would not be in harmony with the area in which it would be located.

On 6 November 2012, Templeton appealed the denial of its application to the Watauga County Superior Court. On 7 November 2012, the superior court issued an *ex parte* writ of certiorari.

On 7 August 2013, the superior court entered an order reversing the Board's denial of Templeton's application. In its third conclusion of law, the superior court found

> 3. The Board's determination that Petitioner's proposed use is not in harmony with the area rests on an overly-restrictive application of the term "area," which amounts to a misinterpretation of the applicable standard. In this case, the relevant "area" within the meaning of the ordinance is not limited to the residences that lie north of the subject site and that do not front State Farm Road but includes similarly situated properties along State Farm Road that are in reasonable proximity to the subject site. The undisputed evidence in the record is that most of those properties are used for office, institutional, and commercial — not residential — purposes. Therefore, the Board's conclusion that the proposed use is not in harmony with the area in which it is to be located is not supported by the evidence.
>
> Also, the Board's findings on lack of harmony generally and impermissibly cite impacts that are inherent in the nature of the proposed use. As matter of law, a board of adjustment cannot deny an application for lack of harmony on the basis that a use deemed conditionally permissible by the local legislative body would produce impacts common to all such uses — for to allow such a decision would be to empower the board to substitute its judgment for that of the elected governing body. All of the Board's findings in this case are of that nature, and as a matter of law do not support the Board's conclusion that the proposed use would not be in harmony with the area in

which it is to be located.

The superior court's order also found that Finding of Fact 10 was not supported by competent evidence.

In its fourth conclusion of law, the superior court found the Board's determination that Templeton's proposed use would not be in conformity with the town's comprehensive plan was based on "general policy statements in the comprehensive plan" and was not a sufficient basis to deny Templeton's application. The superior court also found the Board erred in finding that the proposed use would materially endanger public safety, as "there was not competent, material and substantial evidence to support such a conclusion." Boone filed notice of appeal on 26 August 2013 and a second notice of appeal on 5 September 2013 to correct the filing number listed on the initial notice of appeal.

## II. Jurisdiction & Standard of Review

Jurisdiction in this Court is proper pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2013) (stating a right of appeal lies with this Court from the final judgment of a superior court "entered upon review of a decision of an administrative agency").

Boone first argues that the superior court erred by improperly acting as a fact-finder in its determination of the

"area" considered by the Board's harmony analysis. "[T]his Court examines the trial court's order for error[s] of law by determining whether the superior court: (1) exercised the proper scope of review, and (2) correctly applied this scope of review." *Turik v. Town of Surf City*, 182 N.C. App. 427, 429, 642 S.E.2d 251, 253 (2007) (second alteration in original) (internal quotation marks omitted) (quoting *Tucker v. Mecklenburg Cnty. Zoning Bd. of Adjustment*, 148 N.C. App. 52, 55, 557 S.E.2d 631, 634 (2001)).

Here, the superior court erred when it concluded as a matter of law that the Board considered the wrong "area" when assessing the clinic's harmony with the adjacent community. This issue is more properly construed as a mixed question of fact and law. *See Farm Bureau v. Cully's Motorcross Park*, 366 N.C. 505, 512, 742 S.E.2d 781, 786 (2013) (finding a trial court mislabeled a mixed question of fact and law as a finding of fact); *Morris Commc'ns Corp. v. City of Bessemer City Zoning Bd. of Adjustment*, 202 N.C. App. 631, 636, 689 S.E.2d 880, 883 (2010), *rev'd on other grounds*, 365 N.C. 152, 712 S.E.2d 868 (2011).

In *Morris*, this Court held (i) that interpretation of a term in a zoning ordinance was a question of law and (ii) that

determining whether the specific actions of a petitioner fit within that interpretation was a question of fact reviewable under the whole record test. *Morris*, 202 N.C. App. at 636, 689 S.E.2d at 883. This Court relied on *Whiteco Outdoor Adver. v. Johnston Cnty. Bd. of Adjust.*, 132 N.C. App. 465, 513 S.E.2d 70 (1999), which prescribed *de novo* review of a petitioner's alleged error of law, but also provided deference to a board of adjustment's interpretation of its own ordinance under that *de novo* review. *Id.* at 470, 513 S.E.2d at 74. The Supreme Court rejected this Court's application of a deferential *de novo* standard, stating that "[u]nder de novo review a reviewing court considers the case anew and may freely substitute its own interpretation of an ordinance for a board of adjustment's conclusions of law." *Morris*, 365 N.C. at 156, 712 S.E.2d at 871. The Supreme Court did not reverse this Court's finding that interpreting "work" was properly considered a mixed question of law and fact. *Id.*

Thus, we review the superior court's determination that the Board erred in its definition of "area" in two parts: (i) whether the Board's interpretation of the ordinance's use of "area" prescribed was an error of law under *de novo* review and

(ii) whether the specific findings of fact used to define the area were supported under the whole record test.

Under *de novo* review, we examine the case with new eyes. "[*D*]*e novo* means fresh or anew; for a second time, and an appeal *de novo* is an appeal in which the appellate court uses the trial court's record but reviews the evidence and law without deference to the trial court's rulings." *Parker v. Glosson*, 182 N.C. App. 229, 231, 641 S.E.2d 735, 737 (2007) (quotation marks and citations omitted).

"When utilizing the whole record test, . . . the reviewing court must examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence." *Mann Media, Inc. v. Randolph Cnty. Planning Bd.*, 356 N.C. 1, 14, 565 S.E.2d 9, 17 (2002) (quotation marks and citation omitted). "The 'whole record' test does not allow the reviewing court to replace the Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*." *Thompson v. Wake Cnty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

### III. Analysis

#### A. Defining Area in the Ordinance

As discussed *supra* in Section II, the definition of "area" in the ordinance is a mixed question of law and fact subject to *de novo* review. "[O]ne of the functions of a Board of Adjustment is to interpret local zoning ordinances." *CG & T Corp. v. Bd. of Adjustment of Wilmington*, 105 N.C. App. 32, 39, 411 S.E.2d 655, 659 (1992). "[R]eviewing courts may make independent assessments of the underlying merits of board of adjustment ordinance interpretations. This proposition emphasizes the obvious corollary that courts consider, but are not bound by, the interpretations of administrative agencies and boards." *Morris*, 365 N.C. at 156, 712 S.E.2d at 871 (quotation marks and citation omitted).

In *Morris*, the Supreme Court compared a board of adjustment's interpretation of the term "work" to the actual ordinance:

> [W]e find the BOA's interpretation of the term "work" unpersuasive. The ordinance provides that:
>
> "If the work described in any compliance or sign permit has not begun within six months from the date of issuance thereof, the permit shall expire. Upon beginning a project, work must be diligently continued until completion with some progress being apparent every three months. If such continuance or work is not shown, the permit will expire."

> City of Bessemer City, N.C., Ordinance § 155.207.
>
> Bessemer City's zoning administrator testified at the BOA hearing that he interpreted the term "work" to mean "actually something moving on the ground . . . . [c]onstruction." In his view, Fairway failed to commence "work" within the time period prescribed in the sign permit because he did not observe construction-like activities occurring on the property. He therefore concluded the sign was relocated without a valid sign permit.
>
> In contrast, Fairway argues the term "work" encompasses the broader range of activities necessary to complete the sign relocation. Fairway contends its negotiations with DOT and Dixon, as well as its acquisition of a county building permit, constitute "work" under the ordinance. We agree with Fairway that the term "work" has a broader meaning than mere visible evidence of construction.

*Id.* at 156–57, 712 S.E.2d at 871.

We consider the phrase "area" here and the Board's interpretation of it. The ordinance provides the Board with the ability to deny a special use permit if the application "[w]ill not be in harmony with the area in which it is located." A fact-specific inquiry is necessarily required to define "area" in this context, as each individual application for a special use permit will have different surrounding areas the Board will need to consider when determining whether the property would be

harmonious with its surroundings. This scenario is much like our Supreme Court's interpretation of the phrase a "reasonable time":

> If, from the admitted facts, the court can draw the conclusion as to whether the time is reasonable or unreasonable by applying to them a legal principle or a rule of law, then the question is one of law. But if different inferences may be drawn, or the circumstances are numerous and complicated and such that a definite legal rule cannot be applied to them, then the matter should be submitted to the jury. It is only when the facts are undisputed and different inferences cannot be reasonably drawn from them that the question ever becomes one of law.

*Claus-Shear Co. v. E. Lee Hard Ware House*, 140 N.C. 552, 555, 53 S.E. 433, 435 (1906). Conversely, if the Board made a determination of what "area" generally meant within the ordinance and there was no disagreement about the area in question,[1] a trial court's *de novo* analysis of the Board's conclusion of law, that being an interpretation of "area" within the ordinance, would be appropriate.

Here, the Board used the term "area" as it related to specific findings of fact, which was the proper application under UDO § 69(d). Finding of fact #13 considered Templeton's

---

[1] For example, if the Board made a finding that "area" categorically included all adjacent properties within the R-1 zoning area.

offered survey, which included non-residential developments further down State Farm Road. Finding of fact #14 noted that Templeton's evidence "extended almost a mile away" from the Parcel and that Templeton's survey excluded several properties fronting State Farm Road that the Board considered part of the "area." Finding of fact #16 stated that "distance, topography, and the curves in State Farm Road" separated the Parcel from the commercial properties cited by Templeton as being part of the "area." Finding of fact #17 noted that Templeton's appraiser concluded "that the only developments in the surrounding area were the VFW hall and single-family homes." These findings, amongst others, are a proper contextual usage of "area" as laid forth in the ordinance and are inherently fact specific.

Beyond reviewing the Board's actions, this Court reviews whether the superior court correctly performed its several tasks in its reviewing capacity:

> [T]he task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:
>
> (1) Reviewing the record for errors in law,
>
> (2) Insuring that procedures specified by law in both statute and ordinance are followed,
>
> (3) Insuring that appropriate due process

> rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
>
> (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
>
> (5) Insuring that decisions are not arbitrary and capricious.

*Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Comm'rs of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980).

"When the petitioner correctly contends that the agency's decision was either unsupported by the evidence or arbitrary and capricious, the appropriate standard of review for the initial reviewing court is 'whole record' review. If, however, petitioner properly alleges that the agency's decision was based on error of law, *de novo* review is required." *Tucker*, 148 N.C. App. at 55, 557 S.E.2d at 634. As such, the superior court conducts a *de novo* review under the first three tasks and a "whole record" review for the final two tasks.

Here, the superior court improperly acted as a finder of fact on review and imposed its own view of what the bounded "area" should be, rather than reviewing whether the Board's findings of fact concerning the area were supported by competent evidence and not arbitrary and capricious. The superior court

held that the fact-specific definition of "area" as used by the Board should have included "similarly situated" properties that are "in reasonable proximity to the subject site." "In proceedings of this nature, the superior court is not the trier of fact. Such is the function of the town board." *Coastal Ready-Mix Concrete Co., Inc.*, 299 N.C. at 626, 265 S.E.2d at 383. If findings of fact about the "area" affected here were supported by evidence, they must stand even if conflicting evidence may have allowed the superior court to reach a different result under *de novo* review. *Tate Terrace Realty Investors, Inc. v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997). By improperly acting as a trier of fact, the superior court erred and we reverse its order.

### B. Rebuttal of a Presumed Legislative Finding

Templeton also contends that because Boone's R-1 zoning allowed construction of its clinic under a special use permit, Boone's legislative determination that clinics are entitled to receive special use permits should have been enforced. Templeton cites a number of cases in support of this proposition. *See Woodhouse v. Bd. of Comm'rs of Nags Head*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980) ("Where an applicant for a conditional use permit produces competent, material, and

substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, prima facie he is entitled to it." (citation and quotation marks omitted)); *Blair Investments, LLC v. Roanoke Rapids City Council*, ___ N.C. App. ___, ___, 752 S.E.2d 524, 527 (2013); *Habitat for Humanity of Moore Cnty., Inc. v. Bd. of Comm'rs of Pinebluff*, 187 N.C. App. 764, 768, 653 S.E.2d 886, 888 (2007); *MCC Outdoor, LLC v. Franklinton Bd. of Comm'rs*, 169 N.C. App. 809, 814, 610 S.E.2d 794, 797 (2005); *Clark v. City of Asheboro*, 136 N.C. App. 114, 122, 524 S.E.2d 46, 52 (1999); *Vulcan Materials Co. v. Guilford Cnty. Bd. of Cnty. Comm'rs*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643 (1994) ("The inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan.").

Of the preceding cases, Templeton argues that *Woodhouse* uses a "legislative finding" rule and that *Vulcan* is a "less-restrictive" formulation of the *Woodhouse* test. We do not see conflict between the two cases, which both allow the presumption of granting the special use permit to be rebutted by the party opposing its issuance. *See Blair*, ___ N.C. App. at ___, 752 S.E.2d at 528–29 (citing *Woodhouse* and holding that after a

petitioner "makes a prima facie showing of entitlement to a special use permit, the burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit" so long as denial is "based upon findings which are supported by competent, material, and substantial evidence appearing in the record" (citation and quotation marks omitted)). Thus, while showing that entitlement to a conditional or special use permit creates a prima facie case that a petitioner is entitled to a special use permit, the prima facie case may be rebutted by "competent, material, and substantial evidence [showing the] use contemplated is not in fact in harmony with the area in which it is to be located." *Vulcan*, 115 N.C. App. at 324, 444 S.E.2d at 643 (citations and quotation marks omitted).

Accordingly, we must consult the record to determine whether "competent, material, and substantial" evidence existed to support the Board's harmony analysis. *Id.*

### C. Findings of Fact Supporting Board's Decision to Deny the Special Use Permit

As noted *supra* in Section II, we now review whether the Board's findings of fact were supported by competent evidence under the whole record test. At the outset, we note that

> [A] city council's denial of a conditional use permit based solely upon the generalized objections and concerns of neighboring community members is impermissible. Speculative assertions, mere expression of opinion, and generalized fears "about the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body." In other words, the denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague, or merely an excuse to prohibit the requested use.

*Blair*, ___ N.C. App. at ___, 752 S.E.2d at 529 (quotation marks and citation omitted). Were the Board's findings concerning the area's characteristics solely based on the testimony of individuals affected by development of the Parcel, denial of the permit on those grounds might be impermissible. However, several findings of fact concern the nature of the Parcel and the surrounding area which buttress its decision:

- Finding of fact #3 notes that there would be sixty-seven parking spaces at the clinic.

- Finding of fact #4 describes the twenty-three light poles on the clinic's grounds as well as issues with the shielding on the lights affecting the surrounding residents.

- Finding of fact #5 describes Templeton's proposed left-turn lane to allow access from State Farm Road.

- Finding of fact #6 describes the clinic's proposed "two large dumpster pads," and that Templeton could not estimate how many containers would be placed on the pads.

- Finding of fact #7 noted the uncertainty of the type of clinic that would locate at the facility.

- Finding of fact #8 noted the size, limited weekend use, and lack of lighting by the current church structure on the Parcel.

- Finding of fact #9 noted the historical tendency to zone the surrounding area as R-1.

- Finding of fact #11 noted that the VFW Hall adjacent to the Parcel was grandfathered into existence because it was built before Boone adopted zoning.

- Finding of fact #12 noted that the surrounding area was primarily comprised of single family homes.

- Findings of fact #13, #14, and #15 found that Templeton's survey was not limited to an area that accurately reflected the character of the area near the Parcel, extended close to a mile away from the Parcel, and excluded several properties not fronting State Farm Road.

- Finding of fact #16 finds that the Parcel is separated from the other non-residential parcels cited by Templeton by topography, distance, and road features.

- Finding of fact #17 notes that Templeton's appraiser described the Parcel's surrounding area as the VFW hall and single family homes.

- Findings of fact #18 and #19 note the lack of medical buildings, offices, or other commercial developments in the surrounding area and found that introducing the medical clinic would introduce a "busy commercial operation" into an "overwhelmingly residential" area.

- Findings of fact #20, #21, and #22 note that the clinic would be "much larger" than the surrounding structures, would produce additional traffic, and would create more artificial light than other surrounding structures in the area.

These findings were based on testimony, photographs of the area, drawings, topographic surveys, and other data compiled by the Board prior to its 4 May 2007 denial of Templeton's application. The foregoing was ample evidence to support a finding that the proposed clinic was not harmonious with its surrounding area. Further, the superior court cited only finding of fact #10 as

not being supported by evidence in its order. We disagree and hold that the six residents' testimony of the area regarding its contents constituted competent evidence supporting finding of fact #10.[2] Accordingly, there was competent evidence supporting the Board's finding that the medical clinic would not be in harmony with its surrounding area pursuant to UDO § 69(c)(3) and the superior court erred in overturning the Board's decision to deny the special use permit.

Because we hold that the Board's denial of Templeton's special use permit was supported by competent evidence and proper under its harmony analysis, we do not address Boone's remaining arguments concerning conformance with the comprehensive plan or to provide for the public's safety.

---

[2] The testimony included statements from Ben Shoemake who said the Parcel was surrounded by homes and that the commercial development cited by Templeton was further away from the neighborhood that he described as "much smaller." Les Monkemeyer testified that the neighborhood has trees over a century old in the surrounding area. Marc Kadyk, a thirty-year resident of the neighborhood, testified that the area is heavily wooded. Thirty-four year neighborhood resident and Town Mayor Loretta Clawson testified that the area was overwhelmingly used as homes. Thomas and Joan McLaughlin also testified that the neighborhood was residential in nature, that the area was heavily wooded, and that the commercial portion of State Farm Road to the southeast cited by Templeton was dissimilar because it did not have the same amount of vegetation.

## IV. Conclusion

For the reasons stated above, the decision of the superior court is

REVERSED.

Judges STROUD and DILLON concur.